## H. F. WILCOX OIL & GAS CO. v. STATE et al.

No. 23898. Opinion Filed Feb. 15, 1933.

Dissenting Opinion Feb. 16, 1933.

court on appeal from an order of the Corporation Commission.

While the cause was pending in this court, the appellees filed herein an instrument in writing denominated "confession of error." From the record it appears that the attorneys who represent the appellees in this court did not represent them in this proceeding prior to this appeal. In the instrument filed by them they stated that they received a copy of the record on the morning of the argument of the cause before this court; that upon a careful study of the record, they "are of the opinion that the evidence introduced before the Commission is not sufficient to sustain the order appealed from," and that they "therefore confess appellant's eighth assignment of error, to the effect that the order appealed from is not supported by sufficient competent evidence." Therein they consented that the order of the Corporation Commission appealed from might be reversed and moved that this cause be remanded to the Corporation Commission for a new trial in accordance with the law. An examination of the record discloses that their statement therein, as follows:

"The testimony showed that appellant and Titan Oil Company had sold from appellant's tank on appellant's tank farm to Magnolia Pipe Line Company more oil than appellant was entitled to produce; but the evidence did not show any connection between appellant and Titan Oil Company. The evidence also showed that both appellant and the Titan Oil Company were purchasers of crude oil, and that appellant had gathering lines in the field and a tank farm on the outer edge of the field: and how much of the oil in its tanks and how much of that sold to the Magnolia Petroleum Company and the Empire Companies had been produced by appellant and how much had been purchased was not shown"

—is supported by the record. The order of the Corporation Commission was not supported by competent evidence. It was based on an inference from possession of oil by the appellant. That inference was unwarranted in view of the evidence showing that the appellant was, not only a producing company, but a purchasing company under the provisions of section 7942, C. O. S. 1921, and a distributing company under the provisions of section 7944, C. O. S. 1921; that it had purchased crude oil from other producers and that it had transported crude oil for other producers. As held by the Supreme Court of the United States, in Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, the Oil Con-

Armstrong & Murphy, for appellant.

Hayes, Richardson, Shartel, Gilliland & Jordan and E. S. Ratliff, for appellees.

ANDREWS, J. This cause came to this

servation Act of Oklahoma, chapter 25, Session Laws 1915, sections 7954 to 7963, inclusive, C. O. S. 1921, sections 11565 to 11574, inclusive, O. S. 1931, applies "* * * only to production and not to sale or transportation of crude oil and its products." The Corporation Commission has no authority to make an order shutting in an oil well because the operator of that well has transported or sold oil in an amount larger than the amount allowed to be produced from the well under the allowable fixed by the Corporation Commission. If the well is to be shut in, it must be after proof that the production from the well was in excess of the proportionate amount of oil produced from the common source of supply. There was no evidence in the record supporting the order appealed from. If the Corporation Commission is to sit as a court and make orders which have the effect of judgments for the closing of producing oil wells, it must proceed in an orderly manner and base its orders on competent evidence and not on hearsay statements. The control of property may not be taken from the owners thereof by an order based on the kind of testimony shown by the record in this case. We do not consider it necessary to discuss this feature of the record at length, as the error has been confessed by the appellees.

Notwithstanding the confession of error, under the authority of the decision of this court in C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841, this court will determine some of the issues presented by the record, for the guidance of the Corporation Commission in future hearings of this and other proration matters.

The Corporation Commission is a public agency that ought to have no interest other than the application of the law to the facts. It should not deprive a property owner of the control of his property by the making or enforcement of an order, which its attorneys are compelled to confess to be erroneous, for thereby it does a thing that cannot be righted by a confession of error filed by its attorneys months after the erroneous order was made. We deem it advisable to comment thereon for the reason that the appellant in this case has been deprived of its legal rights by an order of the Corporation Commission, not only in this instance, but in a prior instance wherein the attorneys for the appellees admitted in this court that the orders requiring the shutting in of the wells of this appellant were ineffective and void. This court has sustained the authority of the Corporation Commission to enforce the statutes of Oklahoma with reference to proration of oil, but this court cannot sustain the action of the Corporation Commission when it exercises authority not granted to it by those statutes, or when it exercises lawful authority in an unlawful manner. The Supreme Court of the United States, in Champlin Refining Co. v. Corporation Commission, supra, limited the effect of that decision by holding therein that the affirmance of the judgment thereby would not prevent the issuance of an injunction "* * *to restrain the enforcement of any order proved to be not authorized by the act or unjust and arbitrary and to operate to plaintiff's prejudice." The order appealed from in this case was not only unauthorized by the act, but, under the facts shown by the record, it was unjust and arbitrary and operated to the appellant's prejudice.

The Corporation Commission is authorized, by the provisions of section 7956, C. O. S. 1921, to make rules and regulations for the prevention of waste, as therein defined. In making such rules it acts in a legislative capacity. It is authorized by the provisions of section 7957, C. O. S. 1921, to so regulate the taking of crude oil as to prevent inequitable or unfair taking from a common source of supply. That regulation must be under rules adopted by the Corporation Commission. In making such rules it acts in a legislative capacity. When making rules it may ascertain in any manner it sees fit what rules should be made and it may make such rules without the hearing of any evidence or without regard to the evidence heard. When it attempts to apply those rules in order to prevent waste or to regulate production, it acts in a capacity at least quasi judicial. When so acting it must act either under the rules of procedure and evidence provided by the Legislature, or under rules of procedure and evidence provided by itself, and it may not then act without evidence or upon incompetent, irrelevant, and immaterial evidence.

Its rules must be made by general orders applicable to all cases. It may not make special rules applicable to special cases. The Legislature is prohibited by the provisions of section 46, article 5, of the Constitution, from passing any local or special law regulating the practice of courts, "or other tribunals," and since it is so prohibited, it may not authorize the Corporation Commission to make local or special rules regulating the practice before the Corporation Commission. It has not attempted to do so. Before the Corporation Commission can exercise the authority granted to it by the provisions of section

7957, supra, to regulate the taking of crude oil so as to prevent the inequitable and unfair taking from a common source of supply, it must, by general order provide the procedure to be followed in the regulation thereof. Our attention is called to no order fixing the procedure to be followed by the Corporation Commission in exercising the authority granted to it by the provisions of section 7957, supra. It has attempted to regulate without providing by general order any rule for regulation and it has attempted to enforce its orders without providing by general order any rule for procedure or evidence to be applied therein.

Under the statutes of Oklahoma, proration must be on a per well basis among the wells producing oil from a common source of supply, without regard to the identity of the producer or to the number of wells being produced by him. A proration order on any other basis is void.

The record shows that the Oklahoma City field consists of a number of distinct sands or horizons, each of which is independent of the other and each of which constitutes a separate "source of supply" under the provisions of section 7957, supra. The Corporation Commission after a hearing so found. It said:

"4. That what is known as the Wilcox sand, the location of which is shown on said map attached to the petition of Wirt Franklin and designated on said map in yellow, and which extends along the western edge of said Oklahoma City field, and along the southern edge thereof, is and constitutes a common source of supply, and that the same is separated from other sources of supply in said field by impervious formation, and that the same is hereby designated as the Wilcox sand; that lying east of said Wilcox sand, and designated on said map in blue, there is another separate and distinct common source of supply of oil and gas in said Oklahoma City field, which is commonly known as the Simpson sand below Wilcox, that the same is a distinct common source of supply of oil and gas and is separated from other sources of supply in said field by an impervious structure, and that the same should be designated as the Simpson sand below Wilcox; that on the easterly border of said Oklahoma City field and near the center part thereof from north to south, there lies what is known as the siliceous lime area, the location of which is indicated on said map in red, and that the same is separated from other common sources of supply in said field by an impervious formation, and that the same should be designated as the siliceous lime; that along and near the east-

erly border of said Oklahoma City field there occurs a fault, the line of which runs in a generally northwesterly and southeasterly direction, and is indicated on said map by a dark heavy line, and that the producing formation lying easterly of said fault line, the location of which is designated on said map in green, constitutes a separate and distinct common source of supply in said Oklahoma City field, separated from all other sources of supply therein by an impervious structure, and that said separate source of supply should be designated as the fault line area"

—and held:

"(3) That said Oklahoma City field has heretofore been treated as one common source of supply by all petitioners and by this Commission, but that the question as to whether or not the same was made up of several distinct and separate common sources of supply was raised for the first time by the petition of Wirt Franklin filed herein, and the Commission now orders that said Oklahoma City field is now and shall hereafter, until otherwise ordered by the Commission, be considered as made up of the several separate and distinct common sources of supply of oil and gas as hereinafter defined, and orders:

"(4) That the stratum generally known and referred to as the 'Wilcox sand,' and general location of the portion thereof which is productive of oil and/or gas in the Oklahoma City field being indicated in said map, 'Exhibit B' in yellow, is a separate common source of supply of oil and gas, separate and distinct from all other sources of supply of oil and gas in the Oklahoma City field; that said separate source of supply is hereinafter referred to as the 'Wilcox areas;' and that all oil wells in the Oklahoma City field located westerly of the fault line and which are producing oil from said Wilcox sand and/or from any stratum of formations below said Wilcox sand, and which have the Wilcox sand exposed, i.e., not cased off, are hereby designated, and, for the purpose of this order, shall be considered as Wilcox wells and as located in said Wilcox areas.

"(5) That the strata or portions of the Simpson formation which lie below the Wilcox sand, the general location of the oil and/or gas producing portions of which in the Oklahoma City field are indicated on said map, 'Exhibit B' colored in blue, are a separate common source of supply of oil and gas, separate and distinct from all other sources of supply of oil and/or gas in the Oklahoma City field; that said separate source of supply is hereinafter referred to as the 'Simpson below Wilcox area,' and that all oil wells in the Oklahoma City field located westerly of the fault line, and which are producing from any portion of

the Simpson formation below the Wilcox sand, and which are now producing from either the Wilcox sand or the siliceous lime, and which do not have the Wilcox sand, exposed therein, are hereby designated, and for the purposes of this order shall be considered as Simpson below Wilcox wells, and as located in said Simpson below Wilcox area.

"(6) That the formation generally known, and referred to as the siliceous lime, the general location of the oil and gas-producing portion of which in the Oklahoma City field is indicated on said map exhibit 'B' colored red, is a separate common source of supply of oil and gas in the Oklahoma City field, separate and distinct from all other sources of supply of oil and/or gas in said fields; that said separate source of supply is hereinafter referred to as the 'siliceous lime area,' and that all oil wells in the Oklahoma City field located westerly of the fault line which are producing from said siliceous lime and not producing from the Wilcox or any portion of the Simpson formation below the Wilcox are hereby designated, and, for the purposes of this order, shall be considered as siliceous lime wells and as located in said siliceous lime area.

"(7) That the portion of the Oklahoma City field which lies easterly of the fault line, the general location of the oil and gas-producing portion of which in the Oklahoma City field is indicated on said map exhibit 'B' colored green, is a separate common source of supply of oil and gas in the Oklahoma City field, separate and distinct from all other sources of supply of oil and gas in said field; that said separate source of supply is hereafter referred to as the 'fault line area,' and that all oil wells in the Oklahoma City field located easterly of said fault line are hereby designated, and, for the purposes of this order, shall be considered as fault line wells, and as located in said fault line area."

If the Corporation Commission seeks to regulate the taking of crude oil from the Oklahoma City field, it must consider each of the several common sources of supply in the Oklahoma City field separate from each of the other common sources of supply in that field, determine the market demand from each, and fix the allowables for the several wells in each. The wisdom of the law is justified by the record in this case, which shows that the production from one of the several sources of supply is under entirely different conditions from the production from other of the several sources of supply. It is said herein that a greater amount per well is required to be allocated to some of the wells in the Oklahoma City field than to others because of the nature

of the source of supply, and upon that theory wells have been permitted, under the orders of the Corporation Commission, to produce proportionate quantities of oil in excess of the proportionate quantities permitted to be produced from other wells. The Corporation Commission has seen fit to deduct the total amount of the flat allowables from the total amount of the market demand, thereby giving those wells a preference, and to allocate the remainder proportionately, not only to the other wells, but to those wells which have been permitted to produce under the flat allowable rule. That fact is admitted.

Under the provisions of section 7957, supra, proportionate taking of oil is required only when the full production from any common source of supply of oil cannot be obtained without waste. When the full production of oil from any common source of supply cannot be obtained without waste, then and then only is proportionate taking of oil from that common source of supply required. Then such portion of the oil in the common source of supply may be produced therefrom as may be produced without waste. In order to prevent one producer from a common source of supply obtaining a greater portion of the oil in the common source of supply than the potential production of his well bears to the potential production of the other wells producing from the common source of supply, the Corporation Commission is authorized to regulate the taking of oil therefrom and to prevent the inequitable or unfair taking from that common source of supply by any person, firm, or corporation. The Legislature has not seen fit to authorize the Corporation Commission to combine two separate sources of supply and to regulate them as one source of supply. This record shows that the Corporation Commission has not attempted to regulate the taking of oil from each common source of supply in the Oklahoma City field on the basis of the potential production of the wells therein and the market demand therefrom, but that it has attempted to regulate the taking of crude oil from all of the sources of supply in what is known as the Oklahoma City field and to prorate the production therefrom on the market demand from the field, rather than on the market demand from each common source of supply. In the order from which we have quoted, it said:

"8. That for the conservation of crude oil in what is known as the Simpson below the Wilcox sand, and in the siliceous

lime area, it is necessary to allot the wells producing from the Simpson formations below the Wilcox sand and which are now making or hereafter make material amounts of water, 200 barrels of oil per day each in addition to the per cent. of potential which is allowed to other wells in the Oklahoma City field, and it is necessary to allot to the wells which are producing from the siliceous lime formation, 250 barrels of oil per day each, in addition to the per cent. of potential which is allowed to other wells in said Oklahoma City field. That the additional allowable so given to the siliceous lime and Simpson below Wilcox wells making water will amount to a total allowable for said wells of 26,200 barrels per day, subtracting which from the 162,000 barrels per day of the market found under order No. 5654 to be available for allotment to all eligible wells in the Oklahoma City field in the proportion that their respective potentials bear to the total potential of all eligible wells in the field, leaves a daily market demand of 135,000 barrels available for allotment to all eligible wells in the Oklahoma City field in the proportion that their respective potentials bear to the total potential of all eligible wells in the field, and that subdivision (b) of paragraph 13 of said order No. 5654 should therefore be amended by eliminating therefrom the words and figures, 'five and four-tenths per cent. (5.4%)' occurring in the fifth line of said subdivision, and substituting for the words and figures so stricken the following words and figures, to wit: 'four and five-tenths per cent. (4.5%)'."

Such practice is not authorized by the statutes of this state. We are not herein determining the effect of the allowance of flat allowables in the same common source of supply, but we are holding that several sources of supply may not be combined and the total market demand from the field allocated to the several wells in the field without regard to the several sources of supply in the field. To permit that practice would be to permit the Corporation Commission to exceed the authority granted to it by the provisions of section 7957, supra. The inequitable and unfair taking sought to be prevented thereby is that "from a common source of supply," and the unreasonable discrimination thereby sought to be prevented is that of one "common source of supply" against another.

It is said that the application of these rules will make difficult the enforcement of the proration statutes of this state. We do not agree. While their application may result in changing the method of proration now in force, their enforcement will not af-

fect the statutes of the state, for those rules are in accordance with the statutes of the state. If there are difficulties in the enforcement of proration, the Legislature alone is authorized to furnish a remedy.

For the reasons stated, the order of the Corporation Commission must be and it is vacated, and this cause is remanded to the Corporation Commission for further proceedings not inconsistent herewith.

CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, and WELCH, JJ., concur. RILEY, C. J., dissents. McNEILL, J., absent. BUSBY, J., not participating.

---

RILEY, C. J. (dissenting). The Corporation Commission caused to be filed in this case a confession of error and a motion to dismiss this cause. This plea was filed prior to final submission of the cause. It should be sustained.

In view of the publici juris nature of the controversy and as a condition precedent to dismissal, this court, in the exercise of its discretion, might properly state what it conceives to be the law involved. I would refrain from so doing because of the incongruity of the statute and the Constitution of this state.

The majority decision sustains a delegation of legislative functions to the Corporation Commission. It recognizes the exercise of judicial power by that body. It contemplates the existence in, and the exercise of, executive power by that agency. Thus it is granted in this regard all power political which constitutes of it a body possessed of dictatorial prerogatives.

The oil injustry is not a public utility— it is a private industry—it is owned by individuals, firms, and corporations. Royalty owners are largely comprised of individuals.

There is no authorization contained within our Constitution for the exercise of all power political by one person, board, body, or agency, except as applied to public service corporations, and that under a constitutional exception as to a government republican in form. St. Louis-S. F. Ry. Co. v. State, 81 Okla. 298, 198 P. 73. All other exceptions sought to be provided by statute ought to be strictly construed. To the contrary, such exercise of such consolidated and centralization of power is prohibited by the highest of mandates (section 1, art. 4, Constitution of Oklahoma), for the reason that it is arbitrary government and contrary to the American principle.

When we countenance arbitrary power we sanction rule by will and deny rule by law. Having sanctioned the power of will (Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841), why should we not now sustain the fruits of that power? Both are alien to the spirit and letter of our basic law. Why should a court of justice attempt to rationalize such ideas as typified by these orders?

In my opinion proration of oil was born of monopoly, sired by arbitrary power, and its progeny (such as these orders) is the deformed child whose playmates are graft, theft, bribery, and corruption. It is evolution's experiment.

There should be a return to laws preventing actual waste of natural resources. Such laws should be based upon the proper exercise of police power. The proper exercise of such power requires a statement of the law by the Legislature, a construction of it by the courts, and an enforcement of it by executive agencies