GULF OIL CORPORATION, Plaintiff
in Error,

v.

STATE of Oklahoma and Ferrill H. Rogers,
Conservation Attorney for the Corporation
Commission of the State of Oklahoma,
Defendants in Error.

No. 38219.

Supreme Court of Oklahoma.

March 28, 1961.

Richard B. McDermott, Tulsa, Okl., James B. Diggs, Oklahoma City, Roger K. Allen, Denver, Colo., T. Murray Robinson, Oklahoma City, for plaintiff in error.

Ferrill H. Rogers, Conservation Atty. for Corp. Commission, Mac Q. Williamson, Atty. Gen., Jake Blevins, Ada, Sp. Atty., James C. Hamill and Charles R. Nesbitt, Oklahoma City, for defendants in error.

Busby, Stanfield, Deaton & West, by Orel Busby, Ada, for amicus curiae, Pontotoc County Producers Ass'n, and Board of County Com'rs of Pontotoc County.

Harry Johnson, Oklahoma City, for Oklahoma Education Association.

PER CURIAM.

This is an appeal by Gulf Oil Corporation from an order entered on January 29, 1958, by the State Corporation Commission adjudging Gulf in contempt for violating Order No. 35172, entered by the Commission in July, 1957.

Order No. 35172, determined the market demand for crude oil of Oklahoma origin for the months of August and September, 1957, and well production allowables were fixed accordingly. Paragraph 26 of the order provided:

"That all takers and/or purchasers of crude oil in Oklahoma shall take the full amount of oil allowed by this order unless relieved therefrom by this Commission after notice and hearing as provided for by law or unless previously granted an exception to this paragraph for the specific month the purchaser proposes to initiate purchaser proration."

Gulf did not make application nor was it granted permission to initiate purchaser proration and did not purchase the full amount of oil allowed by the order, although prior to entry of Order No. 35172, Gulf did advise the Commission that it would reduce its purchases. On October 9, 1957, a Complaint was filed and on the same date a Citation for Contempt was issued which charged Gulf with willfully and intentionally violating Order No. 35172, and specifically paragraph 26 set forth above.

The complete order adjudging Gulf to be in contempt is as follows:

### Order

"It Is Therefore Ordered Adjudged and Decreed That the respondent, Gulf Oil Corporation, be and it is assessed and ordered to pay a fine of $5,000.00 as for contempt on account of the disobedience and violation by respondent of Order No. 35172, commencing on August 1, 1957, wherein respondent reduced its purchases of crude oil from leases in Oklahoma to an amount less than the amount of oil allowed by such order to be produced therefrom, without having obtained permission from the Commission to make such reduction in purchases, all as set out at length in the preceding findings.

"It Is Further Ordered that on account of the continuation of such disobedience and violation of Order No. 35172 from August 2, 1957 to and including September 30, 1957, respondent is assessed and ordered to pay additional fines of $5,000.00 per day, as for contempt, for a total of sixty additional days the same violation and disobedience on the part of respondent continued.

"The total fines assessed against respondent for the disobedience and violation of Order No. 35172, commencing August 1, 1957, and continuing through September 30, 1957, shall be the sum of $305,000.00.

"It Is Further Ordered that respondent pay all costs of this proceeding, hereafter to be taxed as provided by law.

"Done and Entered by the Corporation Commission of the State of Oklahoma this 29th day of January, 1958."

The Commission and Gulf do not agree as to what alleged violation or violations formed the basis for the Complaint or what specific violation or violations formed the basis for the Order of Contempt. Commission addresses its brief to a "Contempt Citation for Willful Defiance of Order Enforcing Ratable Taking of Crude Oil", and in Proposition I contends that it is authorized by the Constitution and Statutes of Oklahoma to enter an order designed to enforce ratable taking, such as paragraph 26 of Order No. 35172.

On the other hand, Gulf addresses its brief to an appeal from a "Contempt Citation for Violation of an Order to Buy Crude Oil." In Gulf's Proposition I it is contended the Commission is without authority under the Constitution and Statutes of Oklahoma to enter the order which it has been charged to have violated, or to make any order regulating or making mandatory the purchase of crude oil. In this connection, Gulf argues that the contempt conviction cannot stand unless the order to purchase is valid as one may not be pun-

ished for contempt for disobedience of a void order of the Commission; that the conservation acts authorize the Commission to make rules, regulations, and orders for the prevention of waste and ratable taking in the production of oil, but they do not apply to the purchase, sale, or transportation of oil.

■ Before determining the violation or violations which formed the basis for the Complaint and the Order of Contempt, we must first determine if Gulf is a "Common Carrier" and "Common Purchaser" as contended by the Commission. This is necessary for the reason the allegations in the Complaint charge and the Commission now contends that Gulf Oil Corporation, plaintiff in error, and its wholly owned subsidiary, Gulf Refining Company, are takers and purchasers of crude oil, as defined by Paragraph 26, and are common purchasers and common carriers of crude oil, by pipe line and otherwise, as defined by statute. Also, in Commission's findings it was specifically found that Gulf is a purchaser and taker of crude oil as defined by paragraph 26, and also a common carrier and common purchaser of crude oil as those terms are used and defined in the Constitution and Statutes of Oklahoma.

In this connection, Commission contends Gulf clearly comes within the statutory definition of a common purchaser as a company "exercising * * * the right to carry petroleum * * * by pipeline * * * as owner, lessee, licensee, or by virtue of any right of claim * * *, which is engaged in the business of purchasing crude oil * * *." That Gulf purchases crude oil in the field and transports it by pipe line through its wholly owned subsidiary, Gulf Refining Company.

According to the stipulated facts Gulf Oil Corporation is a separate corporate entity from Gulf Refining Company, which owns and operates the pipe lines through which Gulf Oil Corporation's crude oil purchases are transported; Gulf Oil Corporation does not engage, either in Oklahoma or elsewhere, in the transportation of crude

oil by pipe line for hire or otherwise, nor has it ever engaged in such transportation; Gulf Refining Company's activities and operations are those of an interstate common carrier of crude oil by pipe line for hire; Gulf Oil Corporation owns all of the corporate stock of Gulf Refining Co., except directors' qualifying shares, but the two corporations do not have the same directors, officers or operating personnel.

■ It is the general rule that a corporation is a distinct legal entity separate and apart from other legal entities, but this rule has its limitations. The distinct legal entity may be avoided if it appears from the examination of the entire facts, either (1) that the separate corporate existence is a design or scheme to perpetrate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is merely a dummy or sham. Wallace v. Tulsa Yellow Cab Taxi and Baggage Co., 178 Okl. 15, 61 P.2d 645; Gibson Products Co. of Tulsa v. Murphy, 186 Okl. 714, 100 P.2d 453, and Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 315, 143 P.2d 154.

From an examination of the entire record we can find no evidence or reasons why the general rule that a corporation is a distinct legal entity separate and apart from other legal entities should not be applicable in the case at bar, for it does not appear that the corporate existence of these two Corporations was designed to perpetrate fraud, or that one is so organized that it is a mere instrumentality or adjunct of the other, or that one is merely a dummy or sham of the other.

■ Therefore, if Gulf is a "Common Purchaser" and "Common Carrier" of crude oil, as defined by our statutes, it must be by virtue of its own distinct legal entity separate and apart from Gulf Refining Company. The statutory enactment defining who shall be deemed a Common Purchaser is Title 52 O.S.1951 § 54 which provides:

"Every corporation, * * * *claiming or exercising the right to carry or transport crude oil* or petroleum or any of the products thereof, by pipe line for hire, or otherwise, within the limits of this State, as allowed by, and upon compliance with the requirements of this Article, as owner, lessee, licensee, or by virtue of any other right or claim, *which is engaged in the business of purchasing crude oil or petroleum therein, shall be deemed a common purchaser thereof,* and shall purchase all of the petroleum in the vicinity of, or which may be reasonably reached by its pipe lines, or gathering branches, without discrimination in favor of one producer or one person as against another, and shall fully perform all the duties of a common purchaser; * *."

Under the stipulated facts hereinbefore referred to, "Gulf Oil Corporation does not engage, either in Oklahoma or elsewhere, in the transportation of crude oil by pipeline for hire or otherwise, nor has it ever engaged in such transportation." Since Section 54 provides that *"Every Corporation * * * claiming or exercising the right to carry or transport crude oil * * * which is engaged in the business of purchasing crude oil * * * shall be deemed a common purchaser * * *"*, Gulf could not "be deemed a common purchaser" for the reason it does not claim or exercise the right to carry or transport crude oil.

We therefore cannot sustain the findings and contentions of the Commission that Gulf was a "Common Carrier" and a "Common Purchaser" and hold that the statutory provisions relating to such would not be applicable to Gulf. Inasmuch as Section 54 relates to those wo are "deemed to be common purchasers" and Section 56 relates to common carriers, said provisions are not applicable in the case at bar as contended by the Commission.

We will now consider the violation or violations which formed the basis for the Order of Contempt. Order No. 35172 de-

termined, inter alia, the allowables that could be produced and paragraph 26 thereof provided that all takers and/or purchasers of crude oil shall take the full amount of the oil allowed unless relieved therefrom by the Commission. Gulf reduced its purchases to 80% of the allowable on certain leases but did not reduce its purchases under its re-purchase contracts.

In this connection Gulf contends its reduction in purchases was the same in all states, including Oklahoma, namely 80% of its purchases during July, 1957, from all leases, except waterfloods and salt-water wells; that the re-purchases are in effect, exchanges of oil in different states, the product of one state being purchased in consideration of a reciprocal purchase of a like quantity or value of oil in another state; that the re-purchases are made while oil is in interstate transit in the custody of the pipe line carrier, long after it has left the lease and even the state where produced; that when it accepted Oklahoma crude in exchange for Rocky Mountain crude, it engaged in interstate trade and exercised a right clearly secured to it by the Federal Commerce Clause.

Gulf further contends the Complaint is insufficient at law for want of particularity, and for specific failure to comply with the controlling statutes and that the findings and sentence are not sustained by the evidence, and are at variance to the Complaint and evidence.

The findings of the Commission set forth Paragraph 26 and, inter alia, specifically found: "that the evidence establishes conclusively that respondent Gulf Oil Corporation, commencing August 1, 1957, has willfully and intentionally failed and refused to purchase crude oil lawfully produced from leases in Oklahoma from which respondent is the common purchaser of crude oil in excess of 80% of the amount of crude oil actually purchased by respondent therefrom during the month of July, 1957, although the balance of the allowable crude oil produced or which lawfully could have been produced from such leases and wells was tendered to respondent or available for purchase by it."

"This policy and practice instituted by respondent on August 1, 1957, constituted a willful violation and disobedience of Order No. 35172, and Paragraph 26 thereof. Each day such violation and disobedience continued after August 1, 1957, to and including September 30, 1957, constituted a separate and additional contempt on account of the same disobedience and violation."

At this point in the Commission's findings, no findings had been made relative to Gulf's failure to reduce its purchases under its re-purchase contracts at the same time it had reduced its purchases from other leases. The findings had set forth that portion of the Complaint alleging Gulf had engaged in discriminatory purchasing, and its acts and practices have resulted and will result in waste and injury to correlative rights, but there are no findings sustaining these allegations at this point. Later in the findings it was found that Gulf's acts and practices resulted in discriminatory purchasing, waste and injury to correlative rights, but the record is barren of any finding whatsoever that Gulf was guilty of any contemptuous acts or practices other than those previously referred to.

The order adjudging Gulf to be in contempt provides, "It is therefore ordered * * * that * * * Gulf * * * be and it is assessed and ordered to pay * * * as for contempt on account of the disobedience and violation * * * of order No. 35172 * * * wherein *respondent reduced its purchases* of crude oil from leases in Oklahoma to an amount less than the amount of oil allowed by such order to be produced therefrom, *without having obtained permission from the Commission to make such reduction in purchases,* all as set out at length in the preceding findings."

In examining the Complaint we find it did not charge, and in reviewing the evidence we find it does not disclose, and the Commission does not contend that Gulf

failed to purchase ratably from all leases on which it did reduce its purchases. As a matter of fact, it is more or less conceded that Gulf did purchase ratably on all leases on which it reduced its purchases. Therefore, Gulf was not charged nor was it adjudged to be in contempt for failure to purchase ratably from the leases on which it did reduce its purchases and that issue is not before us for consideration.

We will now consider if the Commission attempted to adjudge Gulf to be in contempt for failure to purchase ratably for the reason it reduced its purchases on certain leases at the same time it purchased all of the allowables under its re-purchase contracts. In considering this issue we will examine the statutory provisions relating to proceedings in contempt and the entire record to ascertain if the Complaint and Order of Contempt conforms with the statutory requirements and the evidence sufficient to sustain an affirmance by this Court.

Title 52 O.S.1951 § 103, specifies how proceedings for contempt may be · commenced and provides that the complaint shall state " * * * briefly in general terms the acts or omissions of the defendant constituting the violation of which complaint is made, * * * provided, that the acts or omissions of the defendant constituting each violation charged shall be briefly stated in general terms in separately numbered paragraphs or counts of such complaint." The complaint charges that Gulf refused to purchase the full amount of ·oil allowed by Order No. 35172 from each of more than 1,650 leases from August 1, 1957, through September 30, 1957. The complaint further charged that "Each successive day's continuation of the above practices by Gulf * * * constitutes a separate violation of law and this Commission's order; and a separate offense against the authority of this Commission. To date, Gulf * * * has committed in excess of 100,000 separate offenses and violations of Commissioner's Orders." The 1,650 leases referred to do not relate to the leases covered by the re-purchase contracts.

In the 4th paragraph of Gulf's "Motion to Quash and to Dismiss" it alleged the Complaint was too vague, general and indefinite to apprise it of precise offenses of which it was accused. On hearing of this motion, an attorney for Commission answered this proposition by stating, "We take the position that the Complaint fully sets out exactly what Gulf is charged with. I don't think that Gulf could reasonably appear here this morning and ask the Corporation Commission to set out in 100,000 different paragraphs the same thing over and over again. To me that would be unnecessary burdening of the record, and· the rule is that if any pleading or procedure in a Court or Commission is capable of reasonable interpretation, that such interpretation shall be given for the purposes of that suit or citation. Now we think, of course, that Gulf knows exactly what they did. We think that they have been able to prepare and have prepared an elaborate defense to that Citation." Later on the attorney stated, "There is only one question involved * * * and that is: Did Gulf ask for and receive an exception to paragraph 26 of Order No. 35172 * * * if in fact they are prorating their purchases from leases in Oklahoma."

It is set forth in the findings that "The Complaint thus charges one violation of the above enumerated orders, arising out of respondent's unauthorized reduction of crude oil purchases in the State of Oklahoma as a whole. The Complaint further charges that the disobedience of or violation continued from August 1, 1957, to and including the date the Complaint was filed."

Without question, the charges in the Complaint are not in conformity with what the attorney for the Commission said the sole issue was and the findings of the Commission. Nor does the Order of Contempt attempt to adjudge Gulf to be in contempt for failure to purchase ratably for the reason it reduced its purchases on certain leases at the same time it purchased all of the allowables under its re-purchase contracts. Therefore, we can only conclude that the Commission did not attempt to hold

or adjudge Gulf to be in contempt for failure to purchase ratably, and if it did attempt to do so, the Complaint was insufficient and the Order of Contempt did not include this violation.

We therefore hold that the Commission did not attempt to adjudge nor did it hold Gulf in contempt for failure to purchase ratably, but for reducing its purchases without having applied for and received from the Commission an order granting it permission to reduce such purchases.

■ Therefore, the issue to be resolved is not whether the Commission has power and authority to enforce ratable purchasing; but whether it has the power and authority, either expressly or by implication, to require and order a purchaser, who is only a purchaser and not also a common carrier, or deemed a common purchaser, to purchase the full amount of oil, as the same is fixed in an allowable order without first being relieved therefrom by the Commission * * * This is in substance what the Attorney for the Commission stated when he said there was only one issue involved and that was: "Did Gulf ask for and receive an exception to paragraph 26 of Order No. 35172 * * * if in fact they are prorating their purchases from leases in Oklahoma?"

■ In resolving this issue we must be cognizant of the well established rule that the authority of the Corporation Commission relating to the conservation of oil is definitely limited to the power expressly or by necessary implication granted to it, and must be exercised in strict conformity therewith. See Carter Oil Co. v. State, 205 Okl. 541, 240 P.2d 787; Oklahoma Natural Gas Company v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970; and H. F. Wilcox Oil & Gas Co. v. Walker, 169 Okl. 33, 35 P.2d 893.

We also must be cognizant that the duties and obligations imposed expressly or by necessary implication upon producers, common carriers or common purchasers are not at issue under the facts in the case at bar for the reasons set forth herein.

We have heretofore considered Section 274 which the Commission contends is applicable in the case at bar. In H. F. Wilcox Oil & Gas Co. v. State, 162 Okl. 89, 19 P.2d 347, 86 A.L.R. 421, we held that Sections 271 through 279, enacted in 1915, apply only to production and not to sale or transportation of crude oil and its products and quoted with approval Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, which stated the same rule. Since we have held Section 274 is applicable only to production and not to sale or transportation, what is its applicability to the facts in the case at bar?

The Complaint charges Gulf "intentionally violated the above described orders of the Corporation Commission, and paragraph 26 thereof, *by refusing to purchase the full amount of the oil allowed"*; the findings of the Commission were predicated on *"respondent's unauthorized reduction of crude oil purchases"*; and, the Order of Contempt was "on account of the disobedience and violation by respondent of Order No. 35172, commencing on August 1, 1957, *wherein respondent reduced its purchases of crude oil from leases."* It is apparent the Complaint was filed, the action tried and the Order of Contempt was based on failure to purchase and not on failure to produce. Even though Gulf may be a producer, its duties and obligations as a producer are not at issue herein. Therefore, we can only conclude and hold that Section 274 is not applicable in the case at bar.

From the 1915 enactment to 1933, there were no changes in the oil and gas conservation laws of this State. However, the 1933 Legislature enacted a new and complete Act, therein prohibiting waste, providing for the equitable and ratable taking of oil and gas, prescribing the procedures before the Corporation Commission, and for the enforcement of the law. Sections 84–138, Title 52 O.S.1951. Since then a number of the sections of the 1933 Act have been amended, repealed or changed; however, the 1933 Act still forms the substantial backbone of the oil and gas conservation statutes of Oklahoma. In examining the

various legislative acts pertaining to the conservation of oil and gas we find that the primary purpose the Legislature had in mind was to conserve the State's natural resources and prevent any waste thereof.

Title 52 O.S.1951 § 86.2 refers to waste incident to the production of oil in excess of transportation or marketing facilities, or reasonable market demands, and provides that the Corporation Commission shall have authority, and is charged with the duty, to make rules, regulations and orders for the prevention of such waste. Section 87.1 relates to production from a common source of supply, well spacing and drilling units.

Although section 86.4 empowers the Commission to make orders, rules and regulations applicable to each common source of supply, we are unable to find any instance where the Legislature has expressly or by necessary implication granted the Commission authority to regulate, control or direct the amount of crude oil a purchaser shall purchase, nor has the Commission called any to our attention. It necessarily follows, if the Commission does not have the power or the authority to require or order a purchaser to purchase the full amount of oil allowed to be produced, it would not have the power and authority to require or order a purchaser to get an exception from such order before it reduced its purchases.

If the Commission does not have the power and authority to require or order such purchasing, it follows that that portion of the order, the same being paragraph 26, is void. See H. F. Wilcox Oil & Gas Co. v. Walker, 168 Okl. 355, 32 P.2d 1044; Oklahoma City et al. v. Corporation Commission, 80 Okl. 194, 195 P. 498. Since paragraph 26 of the Order is void, Gulf could not be punished for contempt for disobedience of paragraph 26. Hall & Briscoe, Inc. v. State, 170 Okl. 618, 41 P.2d 838; Oils, Inc. v. Corporation Commission, 171 Okl. 249, 42 P.2d 535; and H. F. Wilcox Oil & Gas Co. v. Walker, 169 Okl. 33, 35 P.2d 893.

For the reasons herein stated, we are of the opinion, and so hold, that the order entered in this cause by the Corporation Commission of the State of Oklahoma, dated January 29, 1958, adjudging plaintiff in error, Gulf Oil Corporation, guilty of contempt, be and the same is hereby vacated.

There are other assignments of error, however, in view of our conclusions above set forth, we do not deem it necessary to consider them.

Reversed.

WILLIAMS, C. J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.