Howard W. HIXON et al., Plaintiffs in Error,

v.

SNUG HARBOR WATER AND GAS COMPANY, a Corporation, and Corporation Commission of Oklahoma, Defendants in Error.

No. 39480.

Supreme Court of Oklahoma.

April 30, 1963.

Yates A. Land, Elmer W. Adams, Tulsa, for plaintiffs in error.

Crowe, Thieman & Froeb, Harry M. Crowe, Jr., Tulsa, for defendant in error, Sung Harbor Water and Gas Company.

JACKSON, Justice.

This is an appeal by customers of Snug Harbor Water and Gas Company from Order No. 43653, and a later clarifying order, of the Corporation Commission, permitting an increase in water rates charged to the customers.

From the evidence, it appears that Snug Harbor Water and Gas Company began as an individual operation by Mr. Ed Wright, sometime prior to 1955. Its business was to supply water purchased from the City of Wagoner to customers in the Snug Harbor area of Fort Gibson Lake, and to that end Mr. Wright entered into water service contracts with various owners of summer cabins in the area. All contracts called for the payment of a "connection charge" of between. $100.00 and $1000.00, depending apparently on the length of the lines necessary to serve each customer.

On February 1, 1955, the Corporation Commission, upon application filed, assumed jurisdiction of the Company, which had been incorporated in the meantime, and after a tariff covering the water system was filed, established by proper order a schedule of rates for the service, which

superseded the contracts. This rate schedule became effective April 15, 1955, and no appeal was taken from the Commission order approving it.

In 1960 the Company filed its application for an increase in water rates. After extensive hearings, at which customers appeared and objected, the Commission entered the order from which the present appeal is taken. The order contained a finding as to the proper "rate base" to use in computing allowable rates, and in that connection it deducted from the rate base claimed by the Company all "connection charges" previously paid to the Company, and approximately $100,000 for certain lines and tanks then incomplete and not in use. After these deductions, the rate base was set at $57,343.-53, and the Commission found that on that base, the water rates approved would bring a 5.23% rate of return.

The order also included the following paragraph:

"It is further the opinion of this Commission that a uniform connection charge of $200.00 connection charge be in lieu of excess cost for extension as provided in our rules."

A similar provision was in the 1955 order (from which no appeal was taken), except that in the 1955 order the customers were divided into three classes, according to location, with a different connection charge for each class.

The first proposition presented on appeal by the customers is that "the Corporation Commission cannot compel consumers of a public utility to pay for a substantial portion of the investment costs of a water works owned by a private company", and this complaint is addressed to the connection charges paid by the customers both before and after the Commission assumed jurisdiction of this company. In support of their argument, the customers cite Bartlesville Water Company v. City of Bartlesville, 48 Okl. 344, 150 P. 118; and Oklahoma City v. Corporation Commission, 80 Okl. 194, 195 P. 498.

Neither case is applicable under the facts in the instant case.

Bartlesville Water Company v. City of Bartlesville was a case involving rights and duties under a franchise granted by the city of Bartlesville. This court held that under the particular contract set forth in the franchise, and the ordinance granting it, the water company had the duty to construct service lines, at its own expense, to the property lines of customers. No franchise contract is involved in the case now before us.

Oklahoma City v. Corporation Commission was a "rate case" in which peculiar facts were involved. Oklahoma Natural Gas Company in effect "wholesaled" gas at the city limits of Oklahoma City to Oklahoma Gas and Electric Company, which in turn owned a distributing system in the city, and sold the gas to the individual customers. Oklahoma Natural applied to the Commission for a rate increase, which was granted. On appeal, this court held that since Oklahoma Natural was not the distributing company, and did not sell gas to the people of Oklahoma City, the Commission was without jurisdiction to enter the order concerned. As to the other communities involved in that case, the court held that the Commission's rate increase was void because no determination of the "rate base", used in determining the rate increase, had been made, and for the reason that the Commission had no authority to require consumers to pay an additional sum of money for creating a special fund to be known as the "Patrons' Fund" to buy additional pipes and compressors at some future date. That case is not authority for the proposition that the Commission may not order the payment of the "connection charge" involved in the case now before us.

Under this proposition, the customers argue that they should be governed by the provisions of the rules and regulations contained in Order No. 16631 of the Commission, entered in 1943, and which they say is a general order of statewide application. They invite our attention to Rule 32(a) of

said order which provides that the utility company shall furnish free, up to 60 feet of any extension of the lines required to serve any customer, and to Rule 32(b) of said order, which provides that if further extension is required "within the corporate limits of any city or town", the customer may be required to deposit the "excess cost of the extension over the free limit", said deposit to be thereafter rebated in a specified manner, as other customers are added to the extension. They argue that under the rules of Order 16631, they would be entitled to a rebate of the connection charges they have previously paid to the Company, and, in effect, that the Commission's order in the present case has the effect of denying them this rebate.

■ We do not agree. Rule 32(b), by its terms, is limited in application to extensions "within the corporate limits of any city or town". From the evidence, it appears that the Snug Harbor area is sparsely settled and rural in character, and Rule 32(b) is therefore inapplicable. It is not suggested that "connection charges" have exceeded, or will ever exceed, the cost of construction.

■ No case is called to our attention in which we have considered the power of the Corporation Commission to order a "connection charge" such as the one here concerned. However, in other jurisdictions, this power is well established. See 43 Am. Jur. Public Utilities and Services, Sec. 48, wherein it is said:

"* * * But while the utility cannot fix the limits of the proposed extension at territory which will yield an immediate profit, and, on the other hand, cannot be required to make unreasonable extensions, there is a point midway between these extremes at which the utility may require of the proposed consumer assistance in the necessary outlay in furnishing the service."

See also In Re Badger Utility Co. (Wis. 1922) P.U.R.1923B, 410; Lakewood Township v. Lakewood Water Co. (1954) 29 N.

J.Super. 422, 102 A.2d 671; and cases cited in annotation at 58 A.L.R. 543. In In Re Badger Utility Co., supra, it was said:

"The nature of the cost of furnishing service on rural lines has been discussed in a number of cases and it has been quite a general practice, where farmers desire service for them to furnish the funds for constructing the line. *If the utility were to furnish the capital without contribution by the customers the total cost of rural service including a return on the investment would be so great as to make the rates appear extremely high.* In general, rural customers have seemed to prefer to furnish the capital since when they do this the utility's rates do not provide for any return to the company on the investment in the line." (Emphasis supplied)

The first proposition is therefore without merit.

■ The second proposition is to the general effect that the Commission is without authority to apply "special rules and regulations", and that the general rules and regulations embodied in Order No. 16631, above referred to, must be applied. The only authority cited for this proposition is H. F. Wilcox Oil and Gas Co. v. State, 162 Okl. 89, 19 P.2d 347, 86 A.L.R. 421. In that case, this court found that the Commission had attempted to regulate the taking of crude oil and petroleum from common sources of supply, pursuant to Compiled Oklahoma Statutes 1921, Sections 7956 and 7957, without providing *any* rules and regulations in regard thereto. In the applicable paragraph of the syllabus, this court said that when the Commission "adopts rules and regulations *for the prevention of waste, as authorized by the provisions of section 7956, C.O.S.1921,* it must do so by general orders applicable to all cases, and it is not authorized to make local or special rules therefor." (emphasis supplied). Assuming for purposes of argument only that the customers have properly interpreted the language quoted, its applicability is limited to actions of the Commission un-

der the particular statute mentioned. In the case now before us, the Commission was not acting under that statute, and was not dealing with the "prevention of waste".

In this connection, the Company invites our attention to Rule 3 of General Order No. 16631, supra, to the following effect:

"* * * In any case where compliance with any of these rules introduces unusual difficulties, such rule may be modified or temporarily waived by the Commission upon application and proper showing by the utility."

The customers contend that there was no "application and proper showing" in this case. However, in the proposed tariff filed with the amended application, we note the following language:

"A connection charge of $200.00 per company customer will be charged to connect to the lines. *This connection charge is in lieu of the provisions of Rule 32 of General Order 16631 of the Commission* relating to extension of mains or service items." (Emphasis supplied).

The above language was in the tariff as approved by the Commission. We construe it as an application for a modification of the rules contained in General Order 16631, which application was allowed by the Commission. The evidence that the Snug Harbor area is sparsely settled and rural in character would seem to be a reasonable basis for modifying Rule 32, and would constitute the "showing" required by Rule 3.

The second proposition is therefore without merit.

The third proposition is that the Commission's order in this case was "unreasonable, arbitrary and not borne out by sufficient evidence".

Under this proposition, the customers complain chiefly that certain conduct of the Company was arbitrary and discriminatory, and that such discriminatory conduct, having to do with connection charges the Company failed to collect, should have been taken into consideration by the Commission in this case.

In this connection, the record shows that the Company entered into a contract with the Poindexter Club, by the terms of which the club paid for its own water line extension, and was permitted to make about 16 connections to it, upon payment to the Company of a $1000.00 fee. The customers argue that, at the rate of $200 per customer as provided in the tariff, the Company should have collected $3200.00 instead of $1000.00; and that the difference between these two figures should also have been deducted by the Commission from the "rate base" it used in this case, in determining the "rate of return" to be earned by the Company.

The Company concedes that this transaction was not strictly in accordance with the rates in effect at the time, but argues that it resulted in no prejudice to the customers insofar as the rates are concerned. We agree. It must be remembered that the instant case was a "rate case" before the Commission. The issue was whether or not the proposed rate increase should be allowed. Incident to a determination of that issue, it was necessary for the Commission to make a finding as to the "rate base" to be used in computing the rate of return. As we have seen, in so doing it deducted from the base claimed by the Company, *all* connection charges paid to the Company. Thus, if the Company had built the Poindexter Club extension at its own expense, and then collected the additional connection charges, such charges would have been deducted from the rate base by the Commission, and not considered by it in determining the rate of return upon which it approved the rate increase. Therefore it cannot be said that the Poindexter Club transactions referred to in the briefs, had any appreciable effect upon the rate increase, or gave the customers any cause to complain.

The fourth proposition is that the Commission's order violates due process clauses of both federal and state constitutions. No

authority is cited in support of this proposition, and we will therefore consider it only briefly.

The argument under this proposition concerns the connection charges paid pursuant to private contract, before the Commission took jurisdiction of the water company here involved. The gist of the argument is that the connection charges paid constituted the consideration for an agreement on the part of the water company and Mr. Wright to furnish water service at specified rates for a period of twenty years, and that by prescribing rates in excess of those specified in the contracts, the Commission is in effect denying the customers the fruits of their contracts without due process of law.

This argument cannot be sustained. It is too well settled to require citation of authority that "the law is a part of every contract". The police power of the State cannot be contracted away. It is not denied that the power and duty of the Corporation Commission to prescribe rate schedules for water companies and other public utilities, pursuant to plain and unambiguous constitutional and statutory provisions, existed at the time the contracts concerned were executed. Such provisions were an implied part of the contracts, and for that reason it cannot be said that constitutional due process provisions have been violated.

After a careful examination of the record before us, in which we have exercised our independent judgment as to both the law and the facts, as directed by Section 20, Article 9, Oklahoma Constitution, we find that the order is lawful and is supported by competent and substantial evidence. In such case, the order will be affirmed. Anderson-Pritchard Oil Corporation v. Corporation Commission, 205 Okl. 672, 241 P.2d 363.

The order of the Corporation Commission is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.