Application of Southern Union Gas Company, a Domesticated Corporation, for an adjustment of its rates and charges for gas utility service in the State of Oklahoma.

**SOUTHERN UNION GAS COMPANY,**
**Appellee,**

v.

**TEXAS COUNTY IRRIGATION AND WATER RESOURCES ASSOCIATION, INC., a nonprofit Oklahoma Corporation, Appellant.**

**No. 48349.**

Supreme Court of Oklahoma.

April 19, 1977.

Rehearing Denied June 7, 1977.

A. S. Grenier and Tom D. Stephens, Dallas, Tex., William L. Anderson, Oklahoma City, for appellee.

Tryon, Sweet, Field & Petty, Guymon, for appellant.

LAVENDER, Vice Chief Justice:

Southern Union Gas Company (utility), appellee, sought adjustment of its rates in an application before the Corporation Commission of Oklahoma (Commission). Appellant, Texas County Irrigation and Water Resources Association (association), appeared in the proceedings on behalf of its members that were irrigation gas users serviced by this utility to protest any raise in the rates as to sale of irrigation gas.

At evidentiary hearing, held November 25, 1974, the Commission limited the issues to the overall financial condition of the company, and the need for adjustment of rates for gas service other than irrigation gas. Any adjustment of rates for irrigation gas was continued to a date certain.

As a result of this first hearing, the Commission issued its Order No. 110185, dated January 10, 1975. That order made findings (1) that the company's rates were inadequate and did not give a reasonable return on its investment in Oklahoma, and (2) of need for additional revenue from the company's Oklahoma operation to bear a return on the company's original cost rate base of between 7.5% and 8%. Increase of rates for all gas sold, other than irrigation gas, was ordered. The order acknowledged that ordered increase would not satisfy the revenue need and after hearing, if any ordered increase of rates on irrigation gas did not satisfy the additional revenue need, then the granted increase might be subject to adjustment by further orders in this proceeding. This first order was not appealed.

Continued hearing on the irrigation gas rate increase was held March 4, 1975. Commission's Order, No. 111536, dated March 12, 1975, and resulting from that hearing, included findings of the necessity to increase revenue on sale of irrigation gas to approximately $213,000. This would complete the additional revenue needs of some $400,000 found necessary by the first order, No. 110185, to produce the utility a reasonable return on its investment. This second order, No. 111536, eliminated certain contracts with individual irrigation gas users and certain rate schedules.

The eliminated contracts called for purchase of irrigation gas at the flat rate of 29 cents per mcf. Originally, these contracts had been entered into by individual users and Peoples Division of Northern Natural Gas (Northern Natural Gas) during the years 1967 through 1970, and ran for a term of ten years. At those times, Northern Natural Gas operated under the premise that it was not a public utility. Later, and after these eliminated contracts had been executed, Northern Natural Gas agreed

with the Commission it was a public utility and subject to that commission's jurisdiction. The Commission required filed rates, except as to these contracts Northern Natural Gas was required to comply with these contracts by Commission's Order No. 79733. The utility in the present case, Southern Union Gas Company, purchased Northern Natural Gas in 1972. As part of the approval order on this sale, the Commission required the purchasing utility, Southern Union Gas Company, to assume these contracts.

The eliminated schedules allowed different classification of irrigation gas users and different rates. Company's rate schedule 69 was fixed by the second order as the same uniform rate for all irrigation gas users. That schedule was based on a sliding scale downward as the volume of consumption increases.[1]

The second Commission order found the eliminated contracts and schedules to be discriminatory. The uniform treatment for all of the utility's irrigation gas users made a higher charge, particularly as to those users heretofore purchasing gas under the now eliminated contracts. Association appeals with Order No. 111536, the second order, the subject of the appeal by the petition in error.

Here, we do not review the first order, No. 110185. That order is not made the subject of appeal in association's petition in error. Association was a party to this entire proceeding. Association filed a written request for continuance by its attorney five days prior to the first evidentiary hearing. The attorney, representing the protestants including the association and others, appeared at that hearing and acquiesced to consideration of the issues at that time, except as to any increase in the irrigation gas rate. The first order established the utility was not receiving a reasonable rate

of return on its investment and the necessity to increase rates. That order increased rates for the utility's users, other than irrigation gas users. The issue as to a rate change for irrigation gas was reserved for the continued hearing. The first order did establish one classification for all the other users, and allowed a 15 cent per mcf increase in those rates. The order acknowledged the allowed increase on all the other users would not satisfy the revenue need of the utility. Jurisdiction was retained over the other users for a possible final adjustment if, after hearing on the reversed issue of irrigation gas rates, a revenue need still remained. No protestant appealed that order. It is final as to all users, including the association, on the necessity for a rate increase. Here, the appeal review is limited to the second order, No. 111536, and the rate change on sale of irrigation gas. We do not go behind any of the findings of the first order on which the rate change on irrigation gas is based. Those first order findings are final and binding on the association in this appeal.

Association argues (1) the appealed order is not sustained by sufficient evidence, and (2) elimination of the individual user contracts was error.

We consider first the eliminated contracts. This issue is controlled by *Hixon v. Snug Harbor Water and Gas Company*, Okl., 381 P.2d 308, 313 (1963). There, in a rate case, argument was made of a connection charge being consideration for an agreement to furnish water service at a specified rate for twenty years, and by the Commission prescribing rates in excess of that specified in the contracts, the users were being denied the fruits of their contracts without due process of law. In that opinion this court said:

"This argument cannot be sustained. It is too well settled to require citation of

1. RATE UNDER SCHEDULE 69

| First | 1 Mcf or less per monthly billing period | @ | $1.67 | | |
|-------|------------------------------------------|---|-------|-----|-----|
| Next | 49 Mcf per monthly billing period | @ | .54 | per | Mcf |
| Next | 150 Mcf " " " " | @ | .44 | " | " |
| Next | 300 Mcf " " " " | @ | .38 | " | " |
| All Over | 500 Mcf " " " " | @ | .32 | " | " |

authority that 'the law is a part of every contract'. The police power of the State cannot be contracted away. It is not denied that the power and duty of the Corporation Commission to prescribe rate schedules for water companies and other public utilities, pursuant to plain and unambiguous constitutional and statutory provisions, existed at the time the contracts concerned were executed. Such provisions were an implied part of the contracts, and for that reason it cannot be said that constitutional due process provisions have been violated."

■ In the present case, the association wants no rate change for the individual users having flat rate contracts with the utility. This argument says that when the contracts were executed, the utility operated on the premise it was not a public utility and not controlled by the Commission. It was only after execution of the contracts the utility acquiesced to Commission jurisdiction. The incorrect premise of the utility is not controlling. As said in *Hixon, supra*, the State's police power cannot be contracted away and "the law is a part of every contract." Neither can the state's police power be negated by the utility acting on the wrong premise. This is not the case where a private utility entered into contracts and subsequently changed the nature of its operations so as to be public utility and then subject to Commission jurisdiction. Here, at the time the contracts were entered into, the utility was a public utility, but acted on the incorrect premise it was not. The power and duty of the Commission to prescribe rate schedules was an implied part of the contracts, at the time of execution. Their elimination with approved rate schedule 69 is not a constitutional violation of due process and was not error.

■ As to the insufficient evidence argument, association cites *Hixon, supra*, and would suggest this court exercise its own independent judgment on both the law and the facts as allowed by Oklahoma Constitution, Art. 9, § 20, if there is an assertion of a violation of right under the state or federal Constitution. Association's brief points to no clear-cut constitutional violations. It argues, though there was evidence showing some gas purchased by the utility at 40 cents per mcf to possibly satisfy the 29 cents per mcf flat rate contract, there was other evidence that gas costing less than 29 cents per mcf is available to the utility for that purpose. Association contends that evidence does not support the Commission's finding that "the unquestionable evidence is that Southern Union is purchasing gas for 40 cents per MCF from Northern Natural to sell at 29 cents per MCF." We hold that finding is not the controlling finding and issue in this appeal. Heretofore in this opinion, this court has refused the position that elimination of the flat rate contracts was a constitutional violation. In the present case there is no state or federal constitutional violation allowing this court to exercise its own independent judgment on both the law and the facts.

The utility argues a position of substantial evidence supporting the appealed order as to the issues involved. Utility's brief uses a quote from *Yellow Transit Co. v. State*, 198 Okl. 229, 178 P.2d 83 (1947):

"The determination whether there is 'substantial evidence' to support an order made by Corporation Commission does not require that the evidence be weighed, but only that the evidence tending to support the order be considered to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved."

Briefs of both the association and the utility would require substantial evidence to support the appealed order, but measured by different standards. In this case, we reject the standard of independent judgment for there is no constitutional violation.

■ Here, at the hearing limited to irrigation gas rates, the evidence showed an additional revenue need of $213,000 from irrigation gas sales, after the rate increase

as to other users fixed in the first unappealed order. Testimony indicated the last full year available prior to filing the application, and its rate schedules, was 1973. That year was used as the test period for the volume of gas sales and the amount of revenue produced to the utility therefrom. The utility recognized 1973 as an unusually wet year, and its use alone in developing the rate for irrigation gas would understate the volume sold and the revenue produced in a normal year from the sale of irrigation gas. The utility normalized the test period for irrigation gas sales by using three years, 1971 through 1973, to determine the average sales per customer. This added to the volume consumed by the users for the test year 1973 an amount as if 1973 had produced some $373,000 more revenue from irrigation gas than was actually sold. This normalization adjustment reduced the rates for irrigation gas. This evidence, along with fact findings in the first order that was not appealed, satisfies the applied standard in this case of "substantial evidence" to sustain the Commission's order.

The record contains a written statement of reasons upon which the action appealed from was based.[2] That statement was read and considered by this court in disposing of this appeal. Const. Art. 9, § 22.

Order of the Corporation Commission affirmed.

DAVISON, IRWIN, BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

2. Statement of reasons reads in part:

"In this case we have a situation where clearly the public utility was operating at a loss and needing as a minimum at least $400,000.00 additional revenue. The increase of 15 cents per mcf for nonirrigation customers on a normal year's basis would increase gross income by $186,910.00, leaving $213,000.00 to be secured from irrigation customers. The Northern Natural customers were in most instances being served gas under rate schedules which varied in price from area to area and in some instances under specific contracts. There were contracts (covering service to 14 customers) provided for a flat 29 cents price, which was admittedly less than the price that Southern Union was having to pay for gas to serve these customers. If all the former Northern Natural customers, both those on rate schedules and the contracts mentioned, were adjusted to the existing Southern Union rate schedule where all of the irrigation customers were paying equal rates for the same service, there would have been an increase of income of $88,452.00, leaving a deficiency of approximately $124,000 to be spread among all of the customers which would require a further increase of 7.5 cents per mcf.

"The Commission, after having carefully considered the circumstances and background in which these contracts were entered, the fact that when many of them were executed, Northern Natural was purchasing gas from wells which are no longer producing at prices under 20 cents and considering its obligation to see that all customers in the same class are served without discrimination was of the opinion that uniform rates for the same class of service for all of the customers should be prescribed, notwithstanding the existence of these contracts.

"The Commission was of the opinion that these contracts were contrary to public policy from the beginning since a public utility does not have the power to enter into discriminatory contracts in the State of Oklahoma, and that the Commission has the power and duty in a general rate case such as this to abrogate or set aside any contract resulting in discrimination against one group of customers and undue favoritism for another group. * * *."

* * * * * *

"* * *, the Commission in this case directed that uniform rate schedules for irrigation gas be filed using the existing Southern Union general irrigation rate schedule as the basis and authorizing an increase of 7.5 cents per mcf on to it. This results in a uniform rate for irrigation gas averaging 56 cents per mcf delivered to the customer, based on gas costs at the time of the order which is less than half the current intrastate well head price for much new production in Oklahoma and less than the current average cost of all gas purchased by the largest gas utility in Oklahoma, and only a fraction of the costs of energy from other sources available for irrigation purposes. The rate is also much less than in surrounding areas for irrigation gas."