CARTER OIL CO. v. STATE et al.

No. 34122.   Oct. 23, 1951.

As Corrected Nov. 17, 1951.

*240 P. 2d 787.*

W. T. Anglin, Holdenville, Forrest M. Darrough and Joseph A. Gill, Tulsa, and John L. Cravens, Oklahoma City, for appellant.

Floyd Green, Conservation Attorney, Corporation Commission, C. D. Cund, Duncan, and T. Murray Robinson, Oklahoma City, for appellees.

O'NEAL, J. This is an appeal from an order of the Corporation Commission of the State of Oklahoma, fixing the allowable production of oil from a ten-acre tract of land, and fixing the amount of percentage thereof to be taken by the Carter Oil Company, the holder of an oil and gas lease covering said ten-acre tract as to oil and gas produced below the 4,000 foot level below the surface, and Van-Grisso Oil Company, the holder of an oil and gas lease covering said tract as to the oil and gas to be produced from above the 4,000 foot level below the surface.

The Carter-Knox-Woods pool is a source of supply of oil and gas underlying several sections of land in township 3 north, range 5 west, Grady county. The productive portion of the formation is quite narrow horizontally, being approximately 600 to 700 feet wide running in a northwest and southeast direction. The productive portion of said formation is so situated within the section as to dip from the northeast to the southwest at an angle of approximately 60 degrees and is to a depth of approximately 4,000 feet, extending from several feet above said depth to several feet below that depth. The Carter Oil Company owned an oil and gas lease covering the ten-acre tract here involved, namely: The southwest quarter of the southeast quarter of the southeast quarter of section 6, township 3 north, range 5 west of the I. M. On May 26, 1938, it assigned said oil and gas lease to T. H. McCasland "insofar as said lease covers producing horizon above the depth of 4,000 feet." Later Van-Grisso Oil Company, Norman W. Brillhart and Glen S. Norville acquired a part of the interest of McCasland. Under the lease as now owned the Carter Oil Company asserts the right to produce oil and gas in said formation below the depth of 4,000 feet and Van-Grisso Oil Company and associates assert the right to produce from above the depth of 4,000 feet.

In April, 1948, the Carter Oil Company drilled, and completed for production, a well on said tract about 80 feet west of the center of said tract. Thereafter, May 17, 1948, Van-Grisso Oil Company and associates filed an application with the Corporation Commission for permission to drill a well on said ten-acre tract, as an exception to the Commission's rule 202, which, without such exception, prohibited the drilling of another well below the depth of 2,500 feet. The application stated the matter of divided lease ownership; the drilling of a well by the Carter Oil Company, and alleged refusal of the Carter Oil Company to recognize the right of applicant to share in the production of said well, and asserted that unless permission were granted to drill the additional well under an exception to rule 202 of the Commission, they would lose oil rightfully belonging to them.

The application was set for hearing June 11, 1948, before W. H. Sollers, trial examiner, at which time W. D. Grisso produced evidence in support of the application. At that hearing W. D. Grisso, representing the applicants, suggested that the matter of division of the allowable production as between the two wells be deferred until after the Van-Grisso well had been drilled so that the capacities of the respective wells could be ascertained and more exact information as to the producing formation might be made known. The Carter Oil Company requested that a temporary division of allowable be fixed prior to the drilling of the Van-Grisso well to be effective upon completion of such well and pending final hearing on the question of division of the allowable production.

Van-Grisso and Republic Natural Gas Company owned a lease on the ten-acre tract directly south of the Carter-Van-Grisso ten-acre tract. They had drilled a well on the south ten-acre tract and filed a consent and waiver as to the drilling of the second well on the Carter-Van-Grisso ten-acre tract. After said hearing, and based thereon, the report of the trial examiner recommended, and the order of the Corporation Commission granted, permission to Van-Grisso to drill the additional well, and fixed temporary division of the normal per well allowable of 200 barrels per day at 50% to each well in the event the Van-Grisso well be completed as a producer. This order was dated June 22, 1948. On or about October 22, 1948, Van-Grisso commenced the drilling of their well and completed it as a producer on November 23, 1948. On November 30, 1948, Van-Grisso and associates filed an application for an order by the Commission fixing a percentage division of the allowable of the two wells. Hearing was had on this application January 5, 1949, resulting in findings of fact and an order: . . . (2) That the allowable from said tract be fixed at the allowable production for other tracts in a common source of supply, or the capacity of the larger well on the tract, whichever is the smaller; (3) that the Conservation Department make quarterly tests of the capacity of the two wells to produce, for the purpose of fixing the allowable production from said tract; (4) that each of the two wells be allowed to produce 50 per cent of the allowable from the tract as of June 22, 1948, and that all oil produced from said tract subsequent to that date be divided equally between the owners of the two wells located on said tract;

"(5) That the production from the Carter Oil Company's well should be hereafter limited to 10 barrels of oil per day, and the applicants herein should be permitted to produce the remainder of the allowable from said tract from their well until such time as the amount of oil produced from said tract subsequent to June 22nd, 1948 has been produced equally by both parties, and that when such production has been equalized, then the parties should be permitted to produce from said common source of supply underlying said tract of land, equal amounts of the allowable production herefrom."

And:

"(6) That in the event either of said wells are not capable of producing its share of the oil allowed to be produced from said tract, then the other wells (sic) should be permitted to produce only such percentage of its share of the allowable production."

The Carter Oil Company appeals from said findings and order.

The first contention of the Carter Oil Company is that the retroactive provision of the order of the Corporation Commission, making the division of the allowable production of the two wells effective prior to the completion of the second (Van-Grisso) well, is contrary to the applicable law and to the evidence presented in the matter.

The uncontradicted evidence is that the Carter Oil Company completed its well in April, 1948, in the Woods sand formation below a depth of 4,000 feet. The trial examiner found that the Carter Oil Company has drilled a well for oil and gas on said ten-acre tract of land to the Dornick-Hills-Woods sand to a depth of about 4,200 feet, and set their casing at a depth of 4,005 feet below the surface, and are producing oil from said well at a depth of 4,005 feet; that the Dornick-Hills-Woods sand was encountered at a depth of 3,986 feet.

As above stated, the Corporation Commission approved said finding and entered an order permitting Van-Grisso and associates to drill a well on said ten-acre tract to a depth of 4,000 feet for the purpose of producing oil that may be recovered above said depth which belongs to them; that the allowable for wells in that area is 200 barrels per day, and if the well to be drilled by applicants (Van-Grisso and

others) is a producing well, the allowable for the unit upon which these two wells are located shall be divided equally between the two wells; that the Corporation Commission should retain jurisdiction over this matter so that when all available information is had and presented, they may adjust the equities between the owners and operators of the two wells, and fix the allowables for the two wells. The evidence shows that between June 22, 1948, and November 23, 1948, the Carter Oil Company well produced 20,229 barrels of oil. The order of the Corporation Commission, not directly, but in effect, required the Carter Oil Company to account to Van-Grisso and associates for the one-half of the 20,229 barrels of oil produced during said period. It required the Carter Oil Company to reduce its rate of taking to ten barrels of oil per day until Van-Grisso and associates shall have equalized said production by producing from their well the difference between the ten barrels per day and the allowable for the unit, or as much thereof as the Van-Grisso well is capable of producing. During the first 23 days of November, 1948, the Carter Oil Company well produced at the rate of more than 100 barrels per day. At the time of the hearing said well was producing at the rate of 93 barrels per day. The Van-Grisso well was then producing about 55 barrels per day. The allowable as above noted for the unit was 200 barrels per day, or the capacity of the larger of the two wells, whichever was the lesser. Therefore, the allowable for the unit was about 93 barrels per day. The Van-Grisso well was capable of producing only about 55 barrels of oil per day. Therefore, under the order of the Corporation Commission reducing the amount of oil which the Carter Oil Company was permitted to take during the equalization period to ten barrels of oil per day, all the unit would be permitted to take would be about 65 barrels per day, thereby reducing the allowable for the unit to about 28

barrels of oil per day less than the allowable for the unit under the rules of the Commission. That would work a great injustice, not only to the Carter Oil Company, but to the royalty owners under the lease. The latter would be losing one-eighth of about 28 barrels of oil per day during the entire equalization period which we estimate at about 450 days, assuming that the Van-Grisso well will continue to produce as much as 55 barrels per day. The loss to the royalty owners alone would amount to about 1,575 barrels of oil. The loss to the Carter Oil Company would be much greater.

There was no well-spacing order as applied to the Carter-Knox-Woods pool. Rule 202 of the Corporation Commission applicable, as we take it, to all producing fields, or pools, in the state, provides that a well drilled for oil and gas to a common source of supply in excess of 2,500 feet in depth shall be located not less than 330 feet from any property line, or lease line, and shall be located not less than 600 feet from any other producing or drilling oil and gas well, unless otherwise specifically permitted by order of the Commission, upon hearing; with the proviso that the rule shall not be applicable, if the operator proposing to drill files with the Commission a waiver or consent in writing signed by the lease owner towards whom the well location is proposed to be moved. This has the effect of a ten-acre spacing in the absence of a specific spacing order.

The order of the Corporation Commission, in effect, holds that the Carter Oil Company and the Van-Grisso Oil Company and associates are the owners of an oil and gas lease covering the ten-acre tract involved in such proportion that from and after June 22, 1948 (the date Van-Grisso and others were given permission to drill their well) each were entitled to take one-half of the allowable production of said tract; that the allowable production of the tract is 200 barrels of oil per day,

or the capacity of the larger well drilled thereon. The Carter Oil Company had already drilled a well near the center of the tract which, on June 22, 1948, was producing more than 100 barrels of oil per day. Van-Grisso and others did not commence their well until October 22, 1948, and did not complete it to production until November 23, 1948.

The Carter Oil Company continued to produce from its well, and during that 154 days produced and took 20,229 barrels of oil from its well. The effect of the order of the Corporation Commission is to say to the Carter Oil Company, you have, since June 22, 1948, taken from the common source of supply, 20,229 barrels of oil which you were not entitled to take because Van-Grisso and associates were entitled to take a like amount but were unable to do so. For that the Corporation Commission will now cut or limit the amount of oil you may take in the future to 10 barrels of oil per day and will allow Van-Grisso and others to take all of the balance of the allowable from the ten-acre tract until such time as the amount produced from said tract subsequent to June 22, 1948, has been produced equally by both parties, and that when such production has been equalized, and thereafter, the parties should be permitted to produce from said common source of supply underlying said tract of land equal amounts of the allowable produced.

The Carter Oil Company contends that the effect of said order is to say that as of June 22, 1948, one-half of the oil in place under said tract belonged to Van-Grisso, and the other one-half belonged to the Carter Oil Company. They contend that the effect of the order is not much short of an attempt to give Van-Grisso a judgment for one-half of the oil produced by Carter during the period.

From a consideration of the entire record, it is our view that the order of the Corporation Commission entered as of March 8, 1949, is invalid and void for two reasons:

1. The order as appears on its face is void because it is retroactive in that the order allows each well to produce 50% of the allowable capacity of the two wells to produce as of June 22, 1948; that after the date of the order (March 8, 1949) here complained of, the Carter well is limited to a production of ten barrels of oil per day, and that the Van-Grisso well is permitted to produce the remainder of the allowable from said tract from its well until such time as the amount of oil produced from said tract subsequent to June 22, 1948, has been produced equally between said parties; that the effect of the order deprives Carter of its property rights without due process of law in the oil produced from its lease, and thereby deprives it of its property in violation of the Federal and State Constitutions.

Consideration must be given to rules 202 and 312 of the Corporation Commission under which the Commission's power and authority was here invoked. Under rule 202 a well drilled for oil in a common source of supply in excess of 2,500 feet in depth shall be located not less than 330 feet from the property or lease line, and not less than 600 feet from any other producing or drilling well. The rule then provides that the rule shall not apply if the operator proposing to drill files with the Commission a waiver in writing signed by the lease owner towards whom the well location is proposing to be moved. Rule 312 provides:

"The allowable for any well drilled upon a tract containing less than the unit acreage authorized by the Commission or at a location which does not conform to the pattern established by the Orders of the Commission for the common source of supply shall be adjusted in the ratio that the attributable productive acreage in the unit, as shown by testimony in hearing before the Commission, bears to the established unit acreage."

We have held in H. F. Wilcox Oil & Gas Co. v. Walker (1934) 169 Okla. 33, 35 P. 2d 893, and in kindred cases, that the authority of the Corporation Commission relating to the conservation of oil is definitely limited to the power expressly or by necessary implication granted to it and must be exercised in strict conformity therewith. Also, Grison Oil Corporation v. Corporation Commission (1940) 186 Okla. 548, 99 P. 2d 134; H. F. Wilcox Oil & Gas Co. v. Walker et al., 168 Okla. 355, 32 P. 2d 1044.

It is here asserted that the power and authority of the Commission to promulgate the order is vested in the Commission by virtue of the statute (Title 52 O. S. Supp. 1949 §87.1 (a), (b), (c) and (d) ), which statute expresses and defines the powers of the Commission in administering the law applicable to those pools where *well-spacing or drilling units* have been established. The record here shows that the Commission has not, by order, or otherwise, established well-spacing or drilling units in the Carter-Knox-Woods pool. The drilling of wells in the pool is therefore limited here solely by the Commission's rule 202. The powers of the Commission as relied on by the quoted statute are inapplicable here for the reason as stated, no well-spacing or drilling units have been established by the Commission. We so held in Croxton v. State, 186 Okla. 249, 97 P. 2d 11. We cannot subscribe to the contention presented that the effect of the Commission rule 202 establishes the acreage as a well-spacing and drilling unit. That rule simply establishes the location of a drilling site and no more. Unit lines must be established by a proper procedure. That contention is laid at rest by 52 O.S. Supp. 1949 §86.4, which rule provides:

"The Commission is hereby empowered after notice of hearing to make all such orders, rules and regulations applicable to each common source of supply as it may find to be necessary or proper and to make general orders, rules and regulations applicable alike to all common sources of supply in the State. It shall not be necessary to publish such order, rule or regulation, after its adoption or promulgation by the Commission, before it shall go into effect, nor shall it be necessary to publish any such order, rule or regulation in each subsequent annual report of the Commission. *Provided, that the Corporation Commission shall not under the provisions of this Act make any order establishing a well spacing or drilling unit."*

After the Commission granted Van-Grisso the authority to drill a twin well (which order was dated June 22, 1948), Van-Grisso delayed drilling operations until October, 1948, and completed its well in November of 1948. Carter had completed its well in April of 1948. Carter drilled its well under authority of rule 202 and Van-Grisso under authority of the exception provided in said rule. Carter's lease authorized it to produce oil from any point below 4,000 feet from the surface of the land. Van-Grisso's lease authorized it to produce from a well at any point above the 4,000 foot level. No legal restrictions were imposed upon these contract rights of the parties. The Corporation Commission, under its statutory power, limited the production from each comparable tract of ten acres within the pool area to a daily take of 200 barrels. As the Carter and the Van-Grisso wells were incapable of producing the maximum allowable, the Commission was without statutory power to make and enforce the order here complained of. This for the reason that the Commission's power and authority was one limited to restraint only, in the event that the owners of the wells exceeded the maximum production established by the Commission's previous order. Gruger v. Phillips Petroleum Co., 192 Okla. 259, 135 P. 2d 485.

Here, however, the Commission went beyond this limitation. It assumed the power to make an apportionment of the unit allowable. The Carter well, at the time of the entry of the order, was capable of producing 93 barrels daily, and the Van-Grisso well 55 bar-

rels daily. This combined production fell short by 52 barrels the maximum allowable attributable to the unit. Moreover, the Commission's order, as indicated, provided that each of said wells shall be allowed to produce 50% of the allowable production from the tract as of June 22, 1948 (a date five months preceding the completion of the Van-Grisso well as a producer) and then added the additional burden on Carter that its well, as of the date of the Commission's order, March 8, 1949, be limited to a production of ten barrels of oil daily, and that the Van-Grisso well be permitted to produce the remainder of the allowable from said tract from its well until such time as the amount of oil produced from said tract subsequent to June 22, 1948, has been produced equally by both parties, and that when such production has been equalized, then the parties should be permitted to produce from said common source of supply, underlying said tract of land, equal amounts of the ten-acre unit allowable. It will be readily seen that adding Van-Grisso's 55 barrel capacity to the Carter ten barrel restricted allowable, falls short by 28 barrels the maximum capacity of the Carter well. The Commission had the power to establish the maximum production from the ten acre unit, thereby protecting adjacent producing units on a comparable allowable, but it had no authority to allocate the allowances between these producers, this for the reason no restraint was here necessary, as both parties were producing within the limits of the Commission's unit allowable.

We think the Commission fell in error in assuming to act under the statute, 52 O. S. Supp. 1949 §87.1 (a), (b), (c) and (d), but these statutes, as indicated, only apply to those pools where well-spacing or drilling units and zoning ordinances have, under the authority of this statute, been established by the Commission. These statutes may be invoked by the Commission to prevent waste and ratable takings of production under well-spacing and unit operations, and to prevent waste of a natural resource of inestimable value to the general welfare of the people as a whole. The authority is inherent under the police power of the state.

Questions under these statutes were not before the Commission. Its jurisdiction, as indicated, was invoked under its rule 202 for permission to drill a twin well on the ten-acre unit, and the exception provided thereunder for an additional well.

The order of the Commission here considered we hold it to be in excess of the Commission's power and authority, and is thereby void.

2. The order of the Commission (if conceded to be within its jurisdiction) cannot be sustained here because it is not supported by any competent evidence. In fact, the order is directly opposite to the undisputed evidence in the record. In Wilcox Oil & Gas Co. v. State, 162 Okla. 89, 19 P. 2d 347, it was held:

"If the Corporation Commission is to sit as a court and make orders which have the effect of judgments for the closing of producing oil wells, it must proceed in an orderly manner and base its orders on competent evidence. . . ."

As already indicated, the Commission order allowed each well to produce 50% of the allowable production from the tract as of June 22, 1948, and the production after said date to be divided equally between the owners of the two wells. The Commission's rule 312 provides, in part, as follows:

"The allowable for any well drilled upon a tract containing less than the unit acreage authorized by the Commission or at a location which does not conform to the pattern established by the orders of the Commission for the common source of supply shall be adjusted in the ratio that the attributable productive acreage in the unit, as shown by testimony in hearing before the Commission, bears to the established unit acreage."

If rule 312 is properly applicable to the issues here presented, we find the

evidence is not in support thereof. Carter and Van-Grisso each called a geologist to testify in support of their respective claims as to the percentage of oil that might be recovered from the productive sand underlying their respective wells. The order summarized their testimony as follows:

"There is a very wide variance between the testimony of the applicants and the testimony of The Carter Oil Company as to the percentage of oil and gas, in said common source of supply, that each is entitled to produce; highly skilled geologists educated and experienced, each having access to the same subsurface and surface geological data, have reached technical and scientific conclusions that are almost diametrical opposites."

Although the Commission found that the evidence is "almost of diametrical opposites," they found and held that each party was entitled to produce 50% of the production from the unit. There being no further or other evidence offered, we are constrained to the view that the order is not supported by substantial evidence as required by law. Substantial evidence means evidence of substance, and which induces conviction. Pannell et al. v. Farmers Union Co-operative Gin Association of Sterling (1943) 192 Okla. 652, 138 P. 2d 817.

Boards of quasi judicial powers must base their findings and orders on substantial evidence. This court is vested by virtue of the Constitution of Oklahoma with the power to examine into the record on appeal from the Corporation Commission whether in fact the findings and conclusions of the Commission are sustained by law and substantial evidence.

Here, where the order complained of impinges on asserted constitutional rights, the court is authorized to exercise its own independent judgment as to both the law and the facts. See Art. 9, §20, of the Constitution of Oklahoma, as amended under authority of section 35 of said Article. One other suggestion is presented, that the order of allocation, being retroactive in character, is not valid. This on the ground that the allocation orders of the Commission are legislative in character and can only act prospectively. Sterling Refining Co. v. Walker, 165 Okla. 45, 25 P. 2d 312.

The full consideration of the record unerringly leads to the conclusion that the order here is not supported by any substantial evidence and is therefore contrary to law.

The Corporation Commission order No. 22167, insofar as it is in opposition to the views herein expressed, is reversed.

HALLEY, V. C. J., and WELCH, CORN, and GIBSON, JJ., concur. BINGAMAN, J., concurs in conclusions.