Neil R. MONSON, Appellant,

v.

STATE of Oklahoma ex rel. OKLAHOMA CORPORATION COMMISSION, Hamp Baker, Norma Eagleton, Bill Dawson, Commissioners, Don McKinney, Hearing Examiner, Individually and in their official capacities, and Ardmore Drilling Company, an Oklahoma Corporation, Appellees.

No. 57867.

Supreme Court of Oklahoma.

Dec. 12, 1983.

Barbara Rauch, Mary Ann Karns, Edmond, for appellant.

M. Keywood Deese, Gretchen P. Hoover, Oklahoma City, for appellee, Okl. Corp. Com'n.

Barth P. Walker, Walker, Walker & Corbyn, Oklahoma City, for appellee Ardmore Drilling Co.

OPALA, Justice:

The appeal presents two issues for our decision: [1] Does the Open Meeting Act apply to the Corporation Commission [Commission] when it is functioning in an adjudicative capacity? and [2] Is the Commission order here under review supported by substantial evidence? Our answer to the first question is in the negative and to the second in the affirmative.

The appellant [Monson] seeks corrective relief from the Commission's order that authorizes the drilling of a salt water disposal well. The dispute arose when appellee, Ardmore Drilling Company [driller], filed an application with the Commission for permission to dispose of salt water by injecting it into a well to be located near Monson's property. After a hearing, at which Monson appeared to register his protest, the trial examiner recommended that the application be granted. When Monson took exceptions to this action, the Commission en banc remanded the case to the trial examiner for consideration of additional evidence and for preparation of a more comprehensive report. The hearing on remand (before the same trial examiner) culminated in another recommendation adverse to Monson. Exceptions were then argued before the Administrative Review Panel [Panel] and Monson's motion to secure reconsideration was denied. The Panel approved the salt water disposal well, resting its decision on findings substantially the same as those of the trial examiner. Monson then sought review before the Commission. On September

ber 22, 1981 all three commissioners individually contacted the agency counsel by phone to communicate their concurrence in an order authorizing the application to drill. Notice of the September 22 action was forthwith given to the driller by agency counsel. Much later the action came to be reduced to writing. Only two of the three commissioners who were in concurrence signed the order on December 4, 1981. They were then sitting in what was characterized as an "emergency meeting". Although Monson was not notified in advance of the December 4th session, he did receive a copy of the order signed that day.[1] Monson appealed from the order to this court and sought to have it stayed pending review. The stay was granted, conditioned upon the filing of a bond.[2]

I

Monson contends the manner in which the Commission acted in approving the order here under review constitutes a violation of the Open Meeting Act [Act].[3] He urges that at two critical stages the Commission failed to comply with the Act's provisions: (a) when on September 22, 1981 the Commissioners individually considered the application for decision, then contacted the Commission attorney and cast their vote by phone and (b) on December 4, 1981 when the Commissioners signed the order approving the salt water injection well. The Commission counters that when its members sit as a "court of record" and exercise purely adjudicative functions, it stands exempt from the purview of the Act.

■ While Art. 7 § 1, Okl. Const.,[4] creates courts and invests them with judicial power, the Corporation Commission stands

---

1. Although a rig had been moved onto the proposed well site, drilling had not begun when the December 4th order was signed.

2. Monson indicated in his motion to stay that the disposal well had been constructed and that disposal of salt water was about to begin. This court granted the stay and conditioned it upon the filing of a bond. Monson later notified the court that he was unable to post a bond because he could not meet the terms required by the surety company.

3. 25 O.S.1981 §§ 301 et seq.

4. The terms of Art. 7 § 1, Okl. Const., provide: "The judicial power of this State shall be vested in ... a Supreme Court ... *and* such Boards, Agencies and Commissions created by Constitution or established by statute *as exercise adjudicative authority or render decisions in individual proceedings.*" [Emphasis added]

established and governed by the provisions of Art. 9 §§ 15–34, Okl. Const. Within the limits of authority conferred on it by constitutional provisions as well as by statutory enactments, the Commission may exercise legislative, judicial and executive power.[5] There can be absolutely no doubt of the Commission's legitimate claim to possession of adjudicative authority. When in individual proceedings it sits to hear and decide the issues before it, it acts, pursuant to Art. 9 § 19, Okl. Const.,[6] in the exercise of "powers and authority of a court of record". The role so constitutionally assigned to the Commission is entirely consistent both with Art. 4 § 1, Okl. Const.,[7] that provides for the separation of powers, as well as with Art. 7 § 1, Okl. Const.,[8] that vests judicial power in certain constitutionally-created or statutorily-established courts and tribunals.

In some of our past decisions we did refer to the Commission's adjudicative power as "quasi-judicial". We did this in order to distinguish it from pure judicial adjudication. The legal foundation for the Commission's dispute-settling function is different in character from that of other administrative agencies. The latter bodies derive their adjudicative authority not from a direct constitutional grant but rather from statutory delegation.[9] The Commission's dispute-settling power clearly stands reposed in it by virtue of a direct constitutional mandate. Our fundamental law explicitly charges that body with the responsibility of a "court of record".[10] In short, the Constitution's command is that, when acting in an adjudicative capacity, the Commission is to be treated as the functional analogue of a court of record.

Monson argues that the deliberations and vote held September 22, 1981 were in violation of 25 O.S.1981 §§ 305, 306 and 311 of the Act[11] and that the act of

5. *St. Louis & S.F.R. Co. v. Williams*, 25 Okl. 662, 107 P. 428, 430 [1910]; *Smith v. Corporation Commission*, 101 Okl. 254, 225 P. 708, 709 [1924]; *Continental Telephone Co. of Oklahoma v. Hunter*, Okl., 590 P.2d 667 [1979]; see also *State of Oklahoma ex rel. Williams v. Oklahoma Natural Gas Corporation*, 89 F.2d 416, 421 [10th Cir.1937].

6. The terms of Art. 9 § 19, Okl. Const., provide in pertinent part:
"In all matters pertaining to public visitation, regulation or control of corporations, and within the jurisdiction of the Commission, it *shall have powers and authority of a court of record.*" [Emphasis added]

7. The terms of Art. 4 § 1, Okl. Const., provide:
"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive and Judicial; and except as provided in *this Constitution* ... shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." [Emphasis added]

8. See footnote 4 supra; *Russell v. Walker*, 160 Okl. 145, 15 P.2d 114, 119–120 [1932]; *Tweedy v. Oklahoma Bar Ass'n*, Okl., 624 P.2d 1049, 1053 [1981].

9. "Quasi-judicial" is an adjective used by the courts to describe judicial acts performed by one who is not a judge. *Roberts v. City of Cranston Zoning Board*, 448 A.2d 779, 781 [R.I.

1982]; Monson and the Attorney General cite cases which by dicta imply that, while the Commission acts quasi-judicially, it is not a part of the judiciary. See *Atchison, T & S.F. Ry. Co. v. State*, 31 Okl. 43, 119 P. 961, 962 [1911]; *Vogel v. Corp. Commission*, 190 Okl. 156, 121 P.2d 586, 589 [1942]; *State v. Freeman*, Okl., 440 P.2d 744, 751 [1968]. We find these cases inapposite to the issue here.

10. Art. 9 § 19, Okl. Const., supra note 6; also see *Vogel v. Corp. Comm.*, supra note 9. *We do not deal here with applicability of the Open Meeting Act to adjudicative functions exercised by an administrative agency established by a legislative enactment, nor do we intimate a negative view upon the continued viability of our pronouncement* in *Stillwater Savings and Loan Association v. Oklahoma Savings and Loan Board*, Okl., 534 P.2d 9 [1975].

11. The terms of 25 O.S.1981 § 305 provide:
"In all meetings of public bodies, the vote of each member may be publicly cast and recorded."
The terms of 25 O.S.1981 § 306 provide:
"No informal gatherings or any electronic or telephonic communications among a majority of the members of a public body shall be used to decide any action or to take any vote on any matter."
The terms of 25 O.S.1981 § 311 provide for the giving of notice by public bodies subject to the Open Meeting Act for all "regularly scheduled, continued or reconvened, special or emergency meetings of public bodies".

signing the order at an "unauthorized" meeting held on December 4, 1981 violated § 304(5).[12] We do not agree. Since all the acts occurring on both of these dates were performed in the exercise of adjudicative powers,[13] the Commission stood relieved from compliance with the Act by the terms of the § 304 exemption of the judiciary.[14]

■ Lastly, Monson calls our attention to an opinion by the Attorney General in which that official reaches a conclusion opposite from our pronouncement today.[15] The ultimate responsibility for construction and interpretation of our law must be borne by this court *qua* the state's tribunal of last resort.[16]

## II

Monson contends the Commission order is not based on substantial evidence. Arguing that the location chosen for the proposed salt water well would increase the probabil-

ity of an earthquake with severity likely to produce fresh water pollution,[17] he points out that by the terms of 52 O.S.1981 § 86.2[18] the Commission is explicitly charged with the duty of protecting fresh water strata.

■ This court's reviewing power stands confined to an examination of the evidence in an effort to determine whether the findings and conclusions of the trial tribunal are sustainable by law and stand rested on substantial evidence.[19] In the process of review we may not limit ourselves merely to ascertaining that there is substantial evidence which tends to support the Commission's order. Appellate review must extend beyond this point to include proof detracting from the weight of the evidence that tends to support the order.[20] In our search for substantial evidence we regard that as substantial which possesses something of

---

**12.** The terms of 25 O.S.1981 § 304(5) provide in pertinent part:

"... 'Emergency meeting' means any meeting called for the purpose of dealing with an emergency. For purposes of this act, an emergency is defined as a situation involving injury to persons or injury and damage to public or personal property or immediate financial loss when the time requirements for public notice of a special meeting would make such procedure impractical and increase the likelihood of injury or damage or immediate financial loss."

**13.** At no time material to this case was the Commission considering a rule applicable for the future or an act legislative in character. It was conducting a judicial inquiry. *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 [1908]; *In Re Assessment of Kansas City Southern Ry. Co.,* 168 Okl. 495, 33 P.2d 772, 780 [1934].

**14.** The terms of 25 O.S.1981 § 304 provide in pertinent part:

"1. 'Public body' means ... It shall not mean the state judiciary ..."

The § 304 exemption of the "judiciary" has been treated as one that stands constitutionally mandated. See *Goldberg v. 8th Jud. Dist. Ct. In and For County of Clark,* 93 Nev. 614, 572 P.2d 521, 522–523 [1977]. Because we need not deal here with this question, we intimate no view upon it.

**15.** Attorney's General Opinion 77–259 (May 31, 1978).

**16.** *Aetna Cas. and Sur. Co. v. State Bd. for Property and Cas. Rates,* Okl., 637 P.2d 1251, 1254 [1981].

The Attorney General sought leave to intervene on appeal and tendered his brief. Although we had to deny his application for intervenor status, we treated and considered the brief as that of amicus curiae. *Application of Goodwin,* Okl., 597 P.2d 762, 767 [1979]; *Teleco, Inc. v. Corp. Commission,* Okl., 649 P.2d 772, 773 [1982].

**17.** Although Monson's expert witness was unable to say that the precise location of the well lies on a fault, he did testify that the possibility of structural damage to the well was increased. Monson did not claim that the proposed well would lack in mechanical integrity.

**18.** The terms of 52 O.S.1981 § 86.2 provide in pertinent part:

"* * * the Commission shall have authority and is charged with the duty to make rules, regulations, and orders for the ... protection of all fresh water strata and oil or gas bearing strata encountered in any well drilled for oil or gas."

**19.** Art. 9 § 20, Okl. Const.; *Halpin v. Corp. Commission,* Okl., 575 P.2d 109, 112 [1977].

**20.** *Brown v. Banking Board,* Okl., 512 P.2d 166, 170 [1973]; *El Paso Natural Gas v. Corp. Commission,* Okl., 640 P.2d 1336, 1338 [1981]; see also *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 [1951].

substance, i.e., carries with it fitness to induce conviction, even though reasonable men may nonetheless differ.[21]

 Because the Commission is a body of experts, we treat its findings as prima facie just, reasonable and correct. If, on review of the evidence viewed as a totality, we find substantial support for the findings, the order must be affirmed.[22] On the other hand, if it is found that substantial evidence detracts from that which was relied upon by the trial tribunal in its findings, the order will be vacated.[23]

 The record as a whole substantially supports the Commission's findings that there were numerous secondary recovery projects already in the area and that, because of low volumes of salt water, coupled with low injection pressure and high-porosity thickness of the disposal interval, the probability of an increase in pore pressure with resulting subsurface disturbance should be greatly reduced. We find no evidence in the record reasonably supportive of the probability that faulting may exist in the subsurface at the precise location of the proposed well so as to require another situs to be chosen within the same area. The order appears to include adequate safeguards. It provides that the driller (a) will meet mandatory well specifications, (b) should monitor the well for subsurface disturbance and (c) should damage occur, the driller should repair its well and replug it in the event it would be necessary to avoid migration of salt water on Monson's land into fresh water strata. Viewing the record as a whole, we cannot say that the Commission's order is not substantially supported.

Order affirmed.

BARNES, C.J., SIMMS, V.C.J., and IRWIN, HODGES and ALMA D. WILSON, JJ., concur.

LAVENDER and HARGRAVE, JJ., dissent.

DOOLIN, J., disqualified.

---

**21.** *Yellow Transit Co. v. State,* 198 Okl. 229, 178 P.2d 83, 85 [1947] as modified by *El Paso Natural Gas,* supra note 20; *Carter Oil Co. v. State,* 205 Okl. 541, 240 P.2d 787, 796 [1951].

**22.** *St. Louis-San Francisco Ry. Co. v. State,* 81 Okl. 298, 198 P. 73, 76 [1921].

**23.** *City of Edmond v. Corp. Commission,* Okl., 501 P.2d 211, 214 [1972]; see cases cited in footnote 20.