2010 OK CIV APP 86

**NBI SERVICES, INC., Appellant,**

v.

**The CORPORATION COMMISSION OF the STATE of Oklahoma, composed of The Honorable Bob Anthony, Chairman, The Honorable Jeff Cloud, Vice Chairman, and The Honorable Dana L. Murphy, Commissioner; and Davis Operating Co., Appellees.**

**No. 107,452.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 6, 2010.

Gregory L. Mahaffey, Raven V. McNeal–Noumane, Mahaffey & Gore, P.C., Oklahoma City, OK, for Appellant.

Michele Craig, Deputy General Counsel, Oklahoma Corporation Commission, Office of General Counsel, Oklahoma City, OK, for Appellee The Corporation Commission of the State of Oklahoma.

William H. Huffman, Jessie V. Pilgrim, Levinson, Smith, & Huffman, P.C., Tulsa, OK, for Appellee Davis Operating Co.

DEBORAH B. BARNES, Judge.

¶1 NBI Services, Inc. (NBI) appeals from the Oklahoma Corporation Commission's (the OCC) July 22, 2009, Pooling Order No. 569203 (Pooling Order),[1] and the OCC's August 21, 2009, order denying NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]."[2] The Pooling Order pooled common sources of supply in a drilling and spacing unit located in Pittsburg County, Oklahoma, of which appellee NBI and Davis Operating Co. (Davis) owned partial interests. In addition, the Pooling Order named Davis as the operator, and it ordered that any burden on the NBI interest exceeding a 1/4 total royalty be borne by NBI because NBI conveyed overrides in a "non-arm's-length" transaction in contemplation of the Pooling Order.

¶2 In the order denying NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]," the OCC "adopt[ed] the recommendation of the [r]eferee." The referee determined that, although a 1981 Joint Operating Agreement (the 1981 JOA) potentially rendered the Pooling Order invalid, only the district courts have the authority to determine whether all the interested parties are "covered by [the 1981 JOA]...."[3] Hence, the referee recommended that only a separate action brought in the district court could resolve the validity and scope of the 1981 JOA, and that NBI's motion be denied because the OCC does not have jurisdiction to make factual findings regarding the 1981 JOA in order to determine whether it affects the OCC's authority to have entered the Pooling Order.

¶3 Based on our review of the facts and law, we reverse the OCC's Order denying NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]," and remand this case to the OCC with instructions to reconsider NBI's motion and the Pooling Order in light of the 1981 JOA, and determine whether, and to what extent, the 1981 JOA affects the Pooling Order.

## FACTS AND PROCEDURAL BACKGROUND

¶4 Pursuant to a prior order, Order No. 108707, the OCC spaced the subject property—a 640–acre drilling and spacing unit located in Pittsburg County, Oklahoma (the Spacing Unit).[4] NBI is the operator of the Wilson Well in the Spacing Unit. The Wilson Well produces from the Cromwell formation. Davis acquired oil and gas rights in the Spacing Unit in 2007. Davis had drilled some wells in the Hartshorne formation in the Spacing Unit, and, in mid–2007, approached NBI concerning development of the Hartshorne formation in the Spacing Unit. According to Tony Benavides, a landman employed by Davis, NBI and Davis "had personal meetings in their office to discuss this and I thought we had something done and then all of a sudden it met with no avail, so I just indicated that we were going to pool it, which we did...."[5]

¶5 On November 20, 2008, Davis filed a pooling application to drill a well to develop the common sources of supply underlying the Spacing Unit. Davis requested in its application that the OCC:

> issue an Order pooling the interests as a unit and adjudicating the rights and equities of oil and gas owners in the [Lower Boggy (Bartlesville), Upper Savanna, Lower Savanna, Upper Booch, Middle Booch and Hartshorne] common source[s] of supply underlying [the Spacing Unit] all in accordance with 52 O.S., § 87.1, to designate the Applicant or some other party as operator and grant said operator one-year in which to commence operations.[6]

On December 9, 2008, counsel for NBI filed an "Entry of Appearance and Notice of Protest" in opposition to Davis's application.

1. Record (R.), p. 341.

2. R., p. 368.

3. R., p. 255.

4. The legal description of this property is Section 4, Township 6 North, Range 14 East, Pittsburg County, Oklahoma. In Davis's answer brief, p. 2, it asserts that this spacing order was entered by the OCC in 1974.

5. R., p. 37.

6. R., p. 272.

¶ 6 Davis's pooling application was heard by an administrative law judge (the ALJ) on March 5, 2009, at the OCC. In Davis's brief in support of its application, and at the March 5 hearing, it argued that certain royalty overrides made by NBI to its affiliates do not qualify as arms-length transactions and have destroyed any value to the interest and have made development of the unit impossible for those owners outside of the NBI interest.[7] The ALJ recommended that the pooling application be granted. The ALJ further recommended the fair market value options to participation,[8] and recommended that although NBI's "assignment of overriding royalty to Affiliates is a recognized transaction dealing with unit interests, it is not the result of an arm's length transaction and cannot be considered to be fair market value in this unit."[9] Therefore, the ALJ recommended that the pooling application should be granted "without inclusion of an option for parties burdened in excess of a 1/4th royalty; parties so burdened will be responsible for the overrides it created through prior assignments of interest."[10]

¶ 7 NBI appealed the ALJ's recommendations,[11] arguing that the ALJ's recommendations were contrary to law and evidence.[12] Oral arguments were presented to the OCC *en banc* and an appellate referee on April 28, 2009. The appellate referee's report, filed on June 9, 2009, states, in effect, that there is sufficient evidence to support the ALJ's recommendations and that those recommendations are not contrary to law.

¶ 8 On July 22, 2009, the OCC issued the Pooling Order granting Davis's application and noting that the interest of NBI was subject to a "non-arm's-length overriding royalty that was made in contemplation of the pooling proceeding...." In the Pooling Order, the OCC adopted the ALJ's recommendation that any burden on the NBI interest exceeding a total of 25% should be borne by NBI and not Davis.

¶ 9 NBI filed a "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]." In this motion, NBI states that it "has new evidence ... that [a]ffects the standing of [Davis] to file this case and that [a]ffects the jurisdiction of [the OCC] to hear this case."[13] That "new evidence" is the 1981 JOA. After a hearing on the motion, the ALJ recommended that the motion be granted on the grounds that the 1981 JOA, if valid, would invalidate the OCC's authority to have entered the Pooling Order. The ALJ's recommendation was, once again, appealed to an appellate referee who determined that the ALJ's recommendation should be overturned and that the motion should be denied.

¶ 10 The OCC "adopt[ed] the recommendation of the [r]eferee" in its order denying NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]." The referee recommended that NBI's motion be denied because, according to the referee, the OCC does not have jurisdiction to make factual findings regarding the 1981 JOA in order to determine whether it invalidates the OCC's authority to have entered the Pooling Order.

¶ 11 From the Pooling Order, and from the OCC's Order denying its "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]," NBI appeals.

---

7. R., p. 297.

8. The ALJ recommended that the fair-market value options in lieu of participation should be: (a) a cash bonus of $150 per acre with a 23% royalty; or (b) no cash bonus with a 1/4th royalty; (2) that any party burdened in excess of 23% will be precluded from electing the highest cash bonus and royalty and must choose to either participate or take no cash bonus with a 1/4th royalty.

9. R., p. 299.

10. *Id.*

11. R., p. 306.

12. Specifically, NBI argued (1) that the ALJ's report *"fails to protect the correlative rights or prevent waste of hydrocarbons,"* (2) that *"[t]he ALJ erred in not sustaining [NBI's] objection to the economic testimony of [Davis's landman, Tony Benavides], that did not meet the Daubert test,"* (3) that the *"evidence shows that a well will be economic at the reduced net revenue interest,"* and (4) that *"[t]he ALJ erred in abrogating the private property rights of non-parties ... by obliterating their overriding royalty interests."* R., pp. 306–307.

13. R., p. 351.

## STANDARD OF REVIEW

■ ¶ 12 "The [S]upreme [C]ourt has previously held that issues of the Corporation Commission's jurisdiction are questions of law, upon which appellate courts must make independent findings." *Union Pacific Railroad Co. v. Oklahoma Corporation Commission,* 2001 OK CIV APP 56, ¶ 7, 23 P.3d 954, 956. *See Southern Pacific Communications Co. v. Corporation Commission of Oklahoma,* 1978 OK 14, ¶ 11, 586 P.2d 327, 330; *State of Oklahoma ex rel. Cartwright v. Oklahoma Ordnance Works Authority,* 1980 OK 94, ¶ 4, 613 P.2d 476, 479. Because in this appeal we consider whether the OCC has the jurisdiction to make certain factual findings, we must independently determine this legal issue. Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority,* 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083. Questions concerning jurisdiction, in this case subject matter jurisdiction, may be raised at any time by the parties or by this Court on its own motion, which applies to orders and decrees of the OCC. *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, ¶ 16, 687 P.2d 1049, 1052.

## ANALYSIS

¶ 13 NBI argues that the OCC erred in denying its "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]." It argues that "100% of the interest in the [Spacing] Unit was subject to the [1981] JOA," and, therefore, the OCC lacked jurisdiction to enter the Pooling Order.[14] In other words, NBI argues that "Davis is attempting to force pool a Unit where all the interest owners are subject to a JOA in an attempt to extract better terms for itself from the [OCC] than it would be entitled to under the JOA," and "[b]ecause [the OCC] does not have jurisdiction to pool parties whose interests are already pooled by private agreement, [the OCC] erred when it denied NBI's

'Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order].'"[15] NBI sought to have the OCC "reconsider its [Pooling Order] in light of compelling evidence presented that 100% of the working interests in the [Spacing Unit] were covered by the [1981] JOA, a private agreement...."[16]

■ ¶ 14 Pursuant to 52 O.S. Supp.2006 § 86.1 *et seq.,* the OCC oversees the conservation of oil and gas and its jurisdiction is limited to the resolution of public rights. *Tucker v. Special Energy Corp.,* 2008 OK 57, ¶ 9, 187 P.3d 730, 733. "Public rights are involved [in the area of oil and gas conservation] when 'a unitization order, pooling order, or order setting the allowables on the unit's well' affects 'the correlative rights of all mineral rights owners in [a] common source of supply [in a] unit.'" *Id.* (quoting *Leck v. Continental Oil Co.,* 1989 OK 173, ¶ 8, 800 P.2d 224, 226).

■ ¶ 15 On the other hand, the OCC lacks jurisdiction over private rights. That is, the OCC "is without authority to hear and determine disputes between two or more private persons or entities in which the public interest is not involved." *Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 7, 230 P.3d 853, 857 (footnote omitted). "The function of the [OCC] is to protect the rights of the body politic; private rights and obligations of private parties lie within the purview of the district court." *Id.* at ¶ 6 (footnote omitted).

¶ 16 In *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 1984 OK 52, 687 P.2d 1049, the Oklahoma Supreme Court "stated that the parties to [an OCC] forced pooling order [can] flesh out that arrangement through contract," and "the parties' rights and obligations under the contract [are] a matter for determination in the district courts, the proper forum for questions dealing with the respective rights of private parties." *Samson Resources Co. v. Corporation Commission,* 1985 OK 31, ¶ 7, 702 P.2d 19, 21. In *Samson,* the parties did not "flesh out" the arrangement set forth in a forced pooling order (as occurred in *Tenneco* ); instead, the spac-

14. NBI's Brief-in-chief, p. 11.

15. *Id.* at p. 14.

16. *Id.* at p. 15.

ing unit in question had been developed pursuant to a voluntary pooling agreement. The Court stated that this situation "appears, even more clearly than *Tenneco*, to involve a question of private rights." *Id.* at ¶ 8. "To prevent drainage and the concomitant waste occurring in a unit in which interest owners are *not* able to come to terms regarding voluntary development, [the OCC] is empowered, upon proper application, to order those interests pooled." *Id.* at ¶ 11 (emphasis added). In *Samson*, however, because the interest owners were able to come to terms regarding voluntary development, the Court found that it was not within the OCC's jurisdiction to override such a private contractual relationship.[17]

■ ¶ 17 This finding is in line with 52 O.S. Supp.2007 § 87.1(e), which states:

When two or more separately owned tracts of land are embraced within an established spacing unit, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced within such established spacing unit, the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the [OCC], to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit.

Therefore, a pooling applicant must establish that there is no agreement among the owners of the oil and gas rights for the development of the property. Only, among other things, "[w]here ... [the] owners have not agreed to pool their interests" does the OCC

have the authority to enter a forced pooling order. *Id.*[18]

■ ¶ 18 NBI claims that the 1981 JOA shows that all of the interest owners are subject to a private, voluntary agreement regarding the development of the Spacing Unit. Pursuant to the law set forth above, it is clear that NBI's claim regarding the 1981 JOA, if true, threatens the jurisdiction of the OCC to have entered the Pooling Order. Nevertheless, the OCC denied NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]" on the basis that only the district courts have the power to resolve the issue as to whether the 1981 JOA affects the jurisdiction of the OCC to have entered the Pooling Order. For the following reasons, we disagree.

■ ¶ 19 "[The OCC], when exercising its adjudicative authority, is the functional analogue of a court of record with dispute resolution authority conferred by Constitutional grant." *Van Horn Oil Co. v. Oklahoma Corporation Commission*, 1988 OK 42, ¶ 12, 753 P.2d 1359, 1363 (footnote omitted).

There can be absolutely no doubt of the [OCC's] legitimate claim to possession of adjudicative authority. When in individual proceedings it sits to hear and decide the issues before it, it acts, pursuant to Art. 9 § 19, Okl. Const., in the exercise of "powers and authority of a court of record". The role so constitutionally assigned to the [OCC] is entirely consistent both with Art. 4 § 1, Okl. Const., that provides for the separation of powers, as well as with Art. 7 § 1, Okl. Const., that vests judicial power in certain constitutionally-created or statutorily-established courts and tribunals.

*Monson v. State of Oklahoma ex rel. Oklahoma Corporation Commission*, 1983 OK 115, ¶ 4, 673 P.2d 839, 842 (footnotes omitted). Hence, although the OCC does not have the authority to adjudicate private rights disputes, it does have the authority of

---

17. Nevertheless, "no private contract or operating agreement may cause or grant a license to commit waste, or diminish correlative rights, control of which is exclusively within [the] power of [the OCC]." *Tenneco Oil Co. v. El Paso Natural Gas Co.*, 1984 OK 52, ¶ 20, 687 P.2d 1049, 1053 (footnotes omitted).

18. The Pooling Order itself, on page 2, states "[t]hat Applicant ... has not agreed with all of the other such owners in such drilling and spacing unit to pool their interests and to develop the drilling and spacing unit and common source of supply as a single unit. ..."

a court of record to make fact findings to determine whether the dispute is one involving private rights or public rights. That is, the OCC has the power to receive evidence and make fact findings to determine whether it has the jurisdiction to enter an order. *See Samson Resources Co. v. Oklahoma Corporation Commission*, 1993 OK CIV APP 67, ¶ 9, 859 P.2d 1118, 1121 (the OCC "has the power to receive evidence and determine whether an applicant owns minerals or has the right to drill in the subject unit," and "[t]o hold that [the OCC] does not have the authority to determine whether an applicant has standing and hence whether it has jurisdiction, would infringe upon the powers constitutionally and statutorily conferred upon it.").

¶ 20 If the OCC lacked the authority to determine whether the separate owners of a spacing unit are subject to a private agreement to pool their interests and develop that spacing unit, this would infringe upon the OCC's powers constitutionally and statutorily conferred upon it. It would hinder the OCC's ability to enter valid pooling orders because the OCC has the statutory authority to do so only "[w]here ... [the] owners have not agreed to pool their interests...." 52 O.S. Supp.2007 § 87.1(e). Instead, the OCC, when it sits to hear and decide the issues before it, acts pursuant to the "powers and authority of a court of record." Therefore, the OCC has the power to receive evidence and make fact findings to determine whether it has subject matter jurisdiction to enter an order.

¶ 21 Because the OCC did not determine whether, or to what extent, the 1981 JOA affects its jurisdiction, we decline to make this determination. It is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues. *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587. An appellate court cannot craft an initial decision upon an untried question and then direct that it be followed on·remand. *Id. See also Bivins v. State of Oklahoma ex rel. Oklahoma Memorial Hospital*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464 ("[a]n appellate court will not make first-instance determinations of disputed *law or fact* issues. That is the trial court's function *in every case*—whether in law, equity or on appeal from an administrative body."). Instead, we reverse the OCC's Order denying NBI's "Motion to Re–Open, Motion to Stay and to Vacate [the Pooling Order]," and remand this case to the OCC with instructions to reconsider NBI's motion and the Pooling Order in light of the 1981 JOA, and determine whether, and to what extent, the 1981 JOA affects the Pooling Order.

¶ 22 Because we remand this case to the OCC and decline to make first-instance findings on appeal, we deny NBI's motion to admit new evidence into the appellate record that purportedly helps prove the validity of the 1981 JOA. Furthermore, and in light of this Opinion, we need not address the remaining issues raised on appeal regarding whether the Pooling Order is sustained by the law and by substantial evidence.

## CONCLUSION

¶ 23 For the reasons set forth above, we reverse and remand this case to the OCC to reconsider NBI's motion and the Pooling Order in light of the 1981 JOA, and determine whether, and to what extent, the 1981 JOA affects the Pooling Order.

¶ 24 **REVERSED AND REMANDED WITH INSTRUCTIONS.**

WISEMAN, C.J., and FISCHER, P.J., concur.